UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANA JANSEN,

      Plaintiff,

    v.

DONALD J. TRUMP,
President of the United States, et al.

      Defendants.

Civil Action No. 1:25-cv-2961-LLA

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Page

Table of Authorities ...................................................................................................... ii

Background ...................................................................................................................2

    A.    Legal Background ........................................................................... 2

    B.    Procedural History ......................................................................... 5

Legal Standard ..............................................................................................................7

Argument ......................................................................................................................7

    I.    Plaintiff will not suffer imminent irreparable harm. ................................ 7

    II.    Plaintiff will not likely succeed on the merits. ...................................... 10

        A.    The APA claims will likely fail. ................................................. 11

        B.    The constitutional claims will likely fail. ................................... 16

    III.    The other factors weigh against a preliminary injunction. ................................... 27

Conclusion ..................................................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                                  Page(s)

*Albright v. Oliver*,
    510 U.S. 266 (1994) ............................................................................................. 26

*Arroyo Gonzalez v. Rossello Nevares*,
    305 F. Supp. 3d 327 (D.D.C. 2018)..................................................................... 27

*Ayele v. District of Columbia*,
    704 F. Supp. 3d 231 (D.D.C. 2023) ................................................................. 9-10

*Chamber of Com. of U.S. v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) ........................................................................... 14

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ......................................................... 7, 8, 9, 10

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
    473 U.S. 432 (1985) ....................................................................................... 21-22

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992) ........................................................................................... 26

*Cressman v. Thompson*,
    798 F.3d 938 (10th Cir. 2015) ........................................................................... 25

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
    189 F. Supp. 3d 85 (D.D.C. 2016) .................................................................... 13

*Dobbs v. Jackson Women's Health Org.*,
    597 U.S. 215 (2022) ...................................................................................... 26, 27

*Doe v. Kerry,*
    No. 16- 0654-PJH, 2016 WL 5339804 (N.D. Cal. Sept. 23, 2016) ...................... 25

*Drs. for Am. v. Off. of Pers. Mgmt.*,
    793 F. Supp. 3d 112 (D.D.C. 2025) .................................................................. 16

*Elrod v. Burns*,
    427 U.S. 347 (1976) ........................................................................................... 10

*Executive Order. Heller v. Doe ex rel. Doe*,
    509 U.S. 312 (1993) ........................................................................................... 22

*Executive Order. Nat. Res. Def. Council, Inc. v. Dep't of State*,
    658 F. Supp. 2d 105 (D.D.C. 2009) .................................................................. 12

*Fowler v. Stitt*,
    676 F. Supp. 3d 1094 (N.D. Okla. 2023) .......................................................... 25

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ................................................................................................ 11, 12, 14

*Gomez v. Trump*,
    485 F. Supp. 3d 145 (D.D.C.) ........................................................................................ 16

*Gore v. Lee*,
    107 F.4th 548 (6th Cir. 2024) ................................................................................... 26, 27

*Haig v. Agee*,
    453 U.S. 280 (1981) ............................................................................. 2, 3, 13, 24, 25, 27

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019) ......................................................................................... 26

*Mexichem Specialty Resins, Inc. v. EPA*,
    787 F.3d 544 (D.C. Cir. 2015) ......................................................................................... 7

*Michael M. v. Superior Court*,
    450 U.S. 464 (1981) ................................................................................................. 17, 18

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ......................................................................................................... 15

*Nguyen v. INS*,
    533 U.S. 53 (2001) ................................................................................................... 17, 18

*Nken v. Holder*,
    556 U.S. 418 (2009) ......................................................................................................... 7

*Orr v. Trump*,
    786 F. Supp. 3d 397 (D. Mass. 2025) .............................................................................. 9

*Planned Parenthood of Greater New York v. U.S. Dep't of Health & Hum. Servs.*,
    No. 25-cv-2453 (BAH), 2025 WL 2840318 (D.D.C. Oct. 7, 2025) ........................................ 16

*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009) ....................................................................................................... 24

*Powell v. Schriver*,
    175 F.3d 107 (2d Cir. 1999) ........................................................................................... 27

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) ....................................................................................................... 24

*Trump v. Orr*,
    146 S. Ct. 44 (2025) ..................................... 1, 2, 10, 11, 14, 15, 16, 17, 19, 25, 27

*Tulare Cnty. v. Bush*,
    185 F. Supp. 2d 18 (D.D.C. 2001) ................................................................................. 12

*United States v. Carolene Products Co.*,
    304 U.S. 144 (1938) ........................................................................................ 21

*United States v. Laub*,
    385 U.S. 475 (1967) ......................................................................................... 2

*United States v. Skrmetti*,
    605 U.S. 495 (2025) ............................................................... 17, 18, 20, 21, 22,

*Urtetiqui v. D'Arcy*,
    34 U.S. (9 Pet.) 692 (1835) .............................................................................. 2

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015) ....................................................................................... 24

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ....................................................................................... 26

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................. 7

**Statutes**

5 U.S.C. § 701(b)(1) ........................................................................................... 11

5 U.S.C. § 704 .................................................................................................... 11

5 U.S.C. § 706(2)(A) ......................................................................................... 14

8 U.S.C. § 1365b(k)(2) ........................................................................................ 3

18 U.S.C. § 1543 ................................................................................................ 25

22 U.S.C. § 211a .................................................................... 2, 11, 13, 14, 15

**Other**

8 C.F.R. § 235.12(a) ........................................................................................ 3, 8

22 C.F.R. § 51.7(a) ................................................................................... 3, 24, 27

22 C.F.R. § 51.26 ............................................................................................... 25

90 Fed. Reg. 8615 (Jan. 30, 2025) ............................ 3, 4, 5, 6, 12, 17, 18, 19, 22, 23, 24, 27-28

On Inauguration Day, the President issued an Executive Order requiring all federal identification documents—including passports and cards for the Global Entry trusted traveler program—to display an individual's biological sex. Plaintiff seeks a preliminary injunction requiring the Department of State and U.S. Customs and Border Protection ("CBP") to disregard that directive for Plaintiff's passport and Global Entry card. The motion should be denied.

Critically, Plaintiff cannot show imminent irreparable harm. Global Entry is a voluntary program, and Plaintiff need not participate in it to travel internationally. But even if Plaintiff elects to remain a Global Entry participant, Plaintiff does not require a Global Entry card. Participants in Global Entry can enter the United States as a trusted traveler at an airport without the card. The card is required only for expedited procedures when crossing land borders or arriving at seaports, but Plaintiff expresses no imminent plans to do either of those things. As for Plaintiff's passport, it currently identifies Plaintiff as "female" and does not expire until 2032. Because Plaintiff need not renew the passport for six years, any harm that would entail is too remote to justify preliminary injunctive relief.

Plaintiff is also unlikely to prevail on the merits. The Supreme Court has stayed an injunction of the Executive Order's requirement for sex designations on passports. In doing so, the Court concluded that claims overlapping with some of Plaintiff's here are unlikely to be successful and that the injunction caused the government "irreparable injury." *Trump v. Orr*, 146 S. Ct. 44, 46 (2025) (quotation marks omitted). As the Court explained, "[d]isplaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." *Id*. The Court also found that plaintiffs had not shown that "the Government's choice to display biological sex" was based on animus and that they had not shown

that they were "likely to prevail in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." *Id.* Those determinations are binding and conclusive as to Plaintiff's overlapping claims.

Moreover, both Plaintiff's overlapping and nonoverlapping claims are unlikely to succeed on the merits. Plaintiff's claim under the Administrative Procedure Act ("APA") will likely fail because the APA does not allow challenges to presidential actions like the Executive Order. And, in any event, agencies do not act arbitrarily when they follow the requirements of an Executive Order, which is what Plaintiff seeks to stop the Department of State and CBP from doing. Plaintiff's constitutional claims will also not likely succeed. Strict scrutiny is not triggered because the Executive Order does not discriminate based on a suspect class (or any class), does not compel Plaintiff's speech (only the government's speech), and does not implicate any recognized fundamental constitutional right. And the Executive Order easily passes rational-basis review, to the extent it is implicated, because it sensibly chooses an immutable "biological" definition of sex over more "fluid" concepts of gender identity for use on federal identification documents.

## BACKGROUND

### A.    Legal Background

1.    Passports

"The Secretary of State may grant and issue passports . . . under such rules as the President shall designate and prescribe for and on behalf of the United States." 22 U.S.C. § 211a; *see* Act of July 3, 1926, ch. 772, § 1, 44 Stat. 887, 887. A United States passport is a "political document" issued by the federal government and "addressed to foreign powers." *Haig v. Agee*, 453 U.S. 280, 292 (1981) (quoting *Urtetiqui v. D'Arcy*, 34 U.S. (9 Pet.) 692, 699 (1835)). Its purpose is to identify its bearer as a U.S. citizen and to "request[ ] foreign powers to allow the bearer to enter and to pass freely and safely." *United States v. Laub*, 385 U.S. 475, 481 (1967). A passport is thus an official

communication "by which the Government vouches for the bearer and for his conduct." *Agee*, 453 U.S. at 293. "A passport at all times remains the property of the United States." 22 C.F.R. § 51.7(a).

### 2. Global Entry

Global Entry is a "registered traveler program" administered by CBP, a subcomponent of the Department of Homeland Security. It is "designed to expedite the travel of previously screened and known travelers across the borders of the United States." 8 U.S.C. § 1365b(k)(2). The program uses "approved technology" including "biometrics" to "validate identity" and "perform enforcement queries" of pre-approved travelers. 8 C.F.R. § 235.12(a). Those enrolled in Global Entry may—but are not required to—obtain a Global Entry card, though a Global Entry card "is not necessary . . . to continue using Global Entry [at] an airport." *Global Entry FAQ*, https://perma.cc/32PN-7D7L. In fact, Global Entry cards "are not accepted at Global Entry kiosks, which require passports or U.S. lawful permanent resident cards." *Id.* The Global Entry card is used only for expedited entry through dedicated express lanes coming into the United States from Canada and Mexico by land and for expedited entry at seaports. *Id.*

### 3. Executive Order 14168

On Inauguration Day, President Trump issued an executive order declaring it "the policy of the United States to recognize two sexes, male and female." Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism & Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), 90 Fed. Reg. 8615 (Jan. 30, 2025). The Order defines "'[s]ex'" as "an individual's immutable biological classification as either male or female." *Id.* at 8615. A "male" is someone "belonging, at conception, to the sex that produces the small reproductive cell." *Id.* A "female" is someone "belonging, at conception, to the sex that produces the large reproductive cell." *Id.*

- 3 -

The Order directs the Secretary of Health and Human Services to provide "clear guidance expanding on the sex-based definitions" set forth in the Order. 90 Fed. Reg. at 8616. In response, the Department of Health and Human Services published guidance specifying that a person is "either female or male based on whether the person is of the sex characterized by a reproductive system with the biological function of producing eggs (ova) or sperm." *Sex-Based Definitions*, https://perma.cc/JPB9-TJT9. The guidance provides that a "male" "is a person of the sex characterized by a reproductive system with the biological function of (at maturity, absent disruption or congenital anomaly) producing sperm" and a "female" "is a person of the sex characterized by a reproductive system with the biological function of (at maturity, absent disruption or congenital anomaly) producing eggs (ova)." *Id.*

The guidance acknowledges that having "the biological function" to produce eggs or sperm "does not require that eggs or sperms are ever produced" and that "[s]ome females or males may not or may no longer produce eggs or sperm due to factors such as age, congenital disorders or other developmental conditions, injury, or medical conditions that cause infertility." *Sex-Based Definitions*, https://perma.cc/JPB9-TJT9. It also notes that "disorders of sexual development do not constitute a third sex because these disorders do not lead to the production of a third gamete" other than eggs or sperm. *Id.* It likewise notes that "use of hormones or surgical interventions do not change a person's sex because such actions do not change the type of gamete that the person's reproductive system has the biological function to produce." *Id.*

The Executive Order distinguishes the "immutable biological reality of sex" from "the concept of 'gender identity,'" which the Order describes as reflecting "an internal, fluid, and subjective sense of self unmoored from biological facts." 90 Fed. Reg. at 8615. The Executive Order explains that because "'[g]ender identity' reflects a fully internal and subjective sense of

- 4 -

self, disconnected from biological reality and sex and existing on an infinite continuum," it "does not provide a meaningful basis for identification." *Id.* at 8616. The Order therefore directs the Secretary of State and the Secretary of Homeland Security to "implement changes to require that government-issued identification documents, including passports, . . . and Global Entry cards, accurately reflect the holder's sex, as defined" by the Executive Order. *Id.*

### B.    Procedural History

On September 2, 2025, pro se Plaintiff Jana Jansen (under a pseudonym) brought this civil action challenging Executive Order 14168. The complaint alleged that Plaintiff "has lived exclusively as a woman for over 30 years" and that the Executive Order will require certain of Plaintiff's federal "identification documents to reflect a sex inconsistent with her lived reality and surgical correction," among other alleged harms. Compl. (ECF No. 1) ¶¶ 5, 86. The complaint contained claims under the Fifth Amendment's Due Process Clause, *id.* ¶¶ 116–22, the Equal Protection Clause, *id.* ¶¶ 123–30; 149–55, the First Amendment, *id.* ¶¶ 131–38, and the Administrative Procedure Act, *id.* ¶¶ 139–48. The complaint sought an order enjoining the government from enforcing certain aspects of the Executive Order against "post-operative intersex/transgender individuals," *id.* ¶ 161, and from "changing Plaintiff's sex designation on any and all federal government records or identification," *id.* ¶ 164, among other relief.

Along with the complaint, Plaintiff filed a motion for a preliminary injunction (ECF No. 5) and a motion for appointment of counsel (ECF No. 6). Shortly thereafter, Plaintiff also moved for a temporary protective order (ECF No. 13). The Court granted the motion to appoint counsel (ECF No. 20) and later sua sponte denied the motion for a preliminary injunction and the motion for a temporary restraining order. Mem. Op. & Order (ECF No. 36). The motions primarily argued that the Social Security Administration should be immediately stopped from changing the sex in Plaintiff's records from "female" to "male," but the Court concluded that Plaintiff had not shown

a cognizable injury in part because Social Security Cards do not identify the holder's sex. *Id.* at 2, 5, 6 n.3. The Court also noted that Plaintiff had "expresse[d] concerns" about Plaintiff's sex marker being changed to "male" "when she seeks to renew her Global Entry membership, which expires in 2026, . . . or her passport, which expires in 2032." *Id.* at 8 n.4. The Court, however, concluded that "these harms are too conjectural to support injunctive relief at this time." *Id.*

Following the Court's decision, Plaintiff, still pro se, filed another motion for a preliminary injunction, again asserting irreparable harm from an alleged imminent change to the sex designation on Plaintiff's Global Entry card. Mot. (ECF No. 38) ¶ 3. After counsel for the government entered an appearance, the parties jointly sought and obtained a stay of proceedings, including the motion for a preliminary injunction, pending the appointment of counsel for Plaintiff. (ECF No. 43); Min Order (Oct. 10, 2025). Once appointed, Plaintiff's new counsel filed an amended complaint (ECF No. 53) and a renewed motion for a preliminary injunction (ECF No. 66).

The amended complaint and renewed motion for a preliminary injunction argue that Executive Order 14168: (1) is arbitrary and capricious and contrary to constitutional right in violation of the Administrative Procedure Act, Am. Compl. ¶¶ 154–69 (ECF No. 53); Mot. for Prelim. Inj. at 16–24 (ECF No. 68), (2) violates Plaintiff's Fifth Amendment right to equal protection, Am. Compl. ¶¶ 102–38; Mot. for Prelim. Inj. at 24–32, (3) violates Plaintiff's First Amendment right to freedom of speech, Am. Compl. ¶¶ 146–53; Mot. for Prelim. Inj. at 32–35, and (4) violates Plaintiff's Fifth Amendment right to substantive due process, Am. Compl. ¶¶ 139–45; Mot. for Prelim. Inj. at 35–38. The motion for preliminary injunction contends that the Executive Order will cause Plaintiff irreparable harm because it will require Plaintiff to "carry identification documents that do not match her lived sex, appearance, or other documentation,"

which will "out" Plaintiff as intersex and transgender and expose Plaintiff to "discrimination and harassment." Mot. for Prelim. Inj. at 38–43. Plaintiff asks the Court to preliminarily enjoin the government from enforcing the Executive Order with respect to Plaintiff's passport and Global Entry card. Mot. for Prelim. Inj., Proposed Order (ECF No. 66-14).

## LEGAL STANDARD

To establish entitlement to preliminary injunctive relief, the moving party must show that (1) it is likely to prevail on the merits, (2) it will suffer irreparable injury in the absence of an injunction, (3) the balance of harms favors an injunction, and (4) the injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20-21 (2008). The third and fourth factors merge when the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

**I.    Plaintiff will not suffer imminent irreparable harm.**

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "Such injury must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (emphasis omitted) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

Plaintiff is in no danger of "imminent" harm presenting a "clear and present need" for equitable relief. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Plaintiff claims harm from purportedly having to "carry" identification documents that do not match Plaintiff's "lived sex, appearance, and other documentation." Mot. for Prelim. Inj. at 39 (ECF No. 66-1). Plaintiff claims this will lead to "outing" Plaintiff as intersex and transgender and thereby expose Plaintiff to

"discrimination and harassment." *Id.* But Plaintiff is years and years away from possibly having to carry an identification document with a male sex marker.

The only identification documents for which Plaintiff seeks injunctive relief are a Global Entry card and a passport. Plaintiff's Global Entry is currently up for renewal and expires in November 2026. Jansen Decl. ¶ 21 (ECF No. 66-11). But it is not correct to say that Plaintiff will thereafter be "forced to carry" a Global Entry card with a male sex identifier. Mot. for Prelim. Inj. at 39. For starters, Global Entry is a "voluntary" program, 8 C.F.R. § 235.12(a), and Plaintiff need not maintain membership in order to travel internationally. More importantly, even if Plaintiff elects to continue participating in Global Entry, Plaintiff need not carry or even obtain a Global Entry card. *Global Entry FAQ*, https://perma.cc/32PN-7D7L ("[I]t is not necessary to obtain a Global Entry card to continue using Global Entry an airport. A card is only required for expedited entry at the SENTRI and NEXUS lanes coming into the United States"). The program does not require a card for air travel and instead uses "approved technologies," including "biometrics," to validate approved travelers, 8 C.F.R. § 235.12(a). In fact, Global Entry cards are not even accepted at airports for purposes of entry into the United States. *Global Entry FAQ*, https://perma.cc/32PN-7D7L. Plaintiff can therefore forgo obtaining a Global Entry card or leave it stowed away at home when flying internationally. The card is used to access trusted traveler lanes at land borders into the United States and for expedited entry at seaports, *id.*, but Plaintiff expresses no imminent plans to drive across a land border into the United States or arrive at a seaport. Indeed, according to the address on Plaintiff's driver's license (ECF No. 65-3), Plaintiff resides well over one thousand driving miles from the nearest international land border. In any event, even were Plaintiff imminently planning to cross a land border into the United States, Plaintiff could do so through the standard lanes using a passport rather than voluntarily using the trusted traveler lanes.

As for Plaintiff's passport, it currently identifies Plaintiff's sex as female (ECF No. 65-1) and does not expire until the end of 2032, Jansen Decl. ¶ 17 (ECF No. 66-11). That passport will "remain valid until [its] date of expiration." Stufft, Action Memo. (Feb. 6, 2025) at 2 (ECF No. 66-8 at 3).[1] Plaintiff will therefore be able to use that current passport with a female sex designation to travel internationally (and for any other identification purposes) for another six years. Any harm that may entail upon the renewal of Plaintiff's passport is therefore far from "imminent." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297; *cf. Orr v. Trump*, 786 F. Supp. 3d 397, 415 (D. Mass. 2025) (limiting class for preliminary injunctive relief to those who "need to renew their current passport because it expires within one year"). Plaintiff says that the current passport may be lost or stolen and therefore require early renewal, Jansen Decl. ¶ 17 (ECF No. 66-11), but such speculation falls far short of the "certain" harm needed to justify preliminary injunctive relief. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

Also speculative is the assertion that Plaintiff "could be accused of committing perjury." Mot. for Prelim. Inj. at 39. Plaintiff provides no concrete reason to believe that any authority would initiate prosecution or invalidate travel documents if Plaintiff provides information consistent with the Executive Order's definition of sex in an application to renew Global Entry membership. Plaintiff's baseless speculation about such an unlikely event is insufficient to show "certain" irreparable harm. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

Finally, Plaintiff makes the sweeping and incorrect assertion that "any violation of . . . constitutional rights is irreparable." Mot. for Prelim. Inj. at 42–43. To the contrary, "there is no per se rule that the violation of any constitutional right is inherently irreparable." *Ayele v. District*

---

[1]    The Stufft memorandum contradicts Plaintiff's baseless assertion that Plaintiff's passport could be suspended or revoked as "fraudulently obtained." Mot. for Prelim. Inj. at 40.

*of Columbia*, 704 F. Supp. 3d 231, 239 (D.D.C. 2023) (no irreparable harm from alleged violations of due process and equal protection). Even in the context of the First Amendment, where the denial of expressive freedoms "*may* constitute irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (emphasis added), there is no "per se rule that a violation of freedom of expression *automatically* constitutes irreparable harm," *Chaplaincy of Full Gospel Churches*, 454 F.3d at 301 (emphasis in original). Plaintiff does not explain why the particular constitutional violations alleged here, even if true, would result in irreparable harm. Indeed, were Plaintiff required to have a male sex marker on a new Global Entry card and even were Plaintiff's First Amendment claim meritorious (which it is not, for the reasons explained below), there would be no irreparable injury to Plaintiff's speech rights because Plaintiff need not carry or present that card to anyone, as explained above. Instead, Plaintiff may continue for the next several years to use a passport with a female sex marker when traveling. Nor does Plaintiff explain how the alleged equal protection or substantive due process violations would cause any imminent tangible harm, given that Plaintiff has no need to carry or use a Global Entry card and Plaintiff's passport displays Plaintiff's preferred female sex designation. Plaintiff therefore cannot identify a specific irreparable constitutional injury.

## II.    Plaintiff will not likely succeed on the merits.

As an initial matter, Plaintiff fails to acknowledge that the Supreme Court recently held that the government is "likely to succeed on the merits" of claims materially identical to some of those presented here. *Trump v. Orr*, 146 S. Ct. 44, 46 (2025). In *Orr*, a group of plaintiffs challenged the requirement of Executive Order 14168 that new passports display the holders' biological sex at birth. *Id.* at 46. Like Plaintiff, they brought APA and equal protection challenges. *Id.* The Supreme Court stayed a preliminary injunction entered by the United States District Court for the District of Massachusetts. *Id.* The Court opined that the plaintiffs were not likely to prevail

on their claim that State Department "acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." *Id.* (citing 22 U.S.C. § 211a (stating that Secretary of State may grant and issue passports "under such rules as the President shall designate and prescribe for and on behalf of the United States")). The Court also concluded that the requirement to display passport holders' sex at birth "no more offends equal protection principles than displaying their country of birth" because it "is merely attesting to a historical fact without subjecting anyone to differential treatment." *Id.* Though Plaintiff ignores the Court's decision in *Orr*, its assessment of the unlikely success of claims overlapping with some of those brought by Plaintiff—namely, the APA and equal protection claims related to passports—is controlling. Moreover, the Court's conclusions were correct, and Plaintiff's other claims likewise fail, for the reasons discussed in more detail below.

### A. The APA claims will likely fail.

#### 1. The Executive Order is not reviewable under the APA.

The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The President is not an "agency" under the APA. 5 U.S.C. § 701(b)(1); *see Franklin* v. *Massachusetts*, 505 U.S. 788, 800–01 (1992). The President's actions therefore "are not subject to [the APA's] requirements" and "are not reviewable" under the APA. *Franklin*, 505 U.S. at 801.

Plaintiff challenges what the complaint and motion for preliminary injunction refer to as the "Passport Policy" and the "Global Entry Policy" insofar as they would require Plaintiff's passport and Global Entry card to refer to Plaintiff's sex using the biological definitions of "male" and "female" as set forth in the Executive Order. Am. Compl. ¶¶ 5, 7 (ECF No. 53); Mot for Prelim. Inj. at 1, 11–13, 13–15 (ECF No. 66-1). But the requirement for those biological definitions were dictated directly by the Executive Order, which declares it to be "the policy of the United

- 11 -

States to recognize two sexes, male and female"; instructs that "'[g]ender identity'" "does not provide a meaningful basis for identification"; provides that "[a]gency forms that require an individual's sex shall list male or female, and shall not request gender identity"; and directs the Secretary of State and the Secretary of Homeland Security to "require that government-issued identification documents, including passports . . . and Global Entry cards, accurately reflect the holder's sex, as defined under" the Executive Order. 90 Fed. Reg. at 8616. Plaintiff's challenge to what Plaintiff calls the "Passport Policy" and the "Global Entry Policy" is thus a direct challenge to the definition of sex in the Executive Order itself. And because the Executive Order is a presidential action that is "not subject to [the APA's requirements]," *Franklin*, 505 U.S. at 801, Plaintiff may not challenge that order's biological definition of sex as arbitrary or capricious under the APA.

Plaintiff cannot evade that conclusion by purporting to challenge "[*a*]*gency* action pursuant to the Executive Order." Mot. for Prelim. Inj. at 17 (ECF No. 66-1) (emphasis added). That is because the Department of State and CBP, insofar as Plaintiff challenges their actions, are "acting solely on behalf of the President" to implement the "purely presidential prerogatives" in the Executive Order. *Nat. Res. Def. Council, Inc. v. Dep't of State*, 658 F. Supp. 2d 105, 109 (D.D.C. 2009). Because those President's directives are "not subject to [the APA's] requirements," an agency's compliance with the letter of those directives is "not reviewable" under the APA. *Franklin*, 505 U.S. at 801; *see also Tulare Cnty. v. Bush*, 185 F. Supp. 2d 18, 28–29 (D.D.C. 2001) (rejecting "the absurd notion that all presidential actions must be carried out by the President him or herself in order to receive the deference Congress has chosen to give to presidential action"), *aff'd*, 306 F.3d 1138 (D.C. Cir. 2002).

- 12 -

Moreover, with respect to passports, this is not a case where the challenged agency action is the exercise of discretion "delegated to an agency head but directed by the President." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001). Rather, this is a case where the exercise of discretion is "committed to . . . the President" himself, and the challenged agency action ministerially carries out the President's decision. *Id.* The Passport Act provides that the Secretary of State may issue passports "under such rules as the President shall designate and prescribe for and on behalf of the United States." 22 U.S.C. § 211a. The statute thus supplements the President's inherent Article II authority to prescribe rules for the issuance of passports. *Agee*, 453 U.S. 293–94. And the President exercised this statutory and constitutional power in the Executive Order. Because the State Department's Passport Policy is implementing "discretionary authority vested in the President," the Court cannot "review an APA challenge . . . regardless of whether the President or the agency takes the final action." *Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 104 (D.D.C. 2016), *aff'd*, 875 F.3d 1132 (D.C. Cir. 2017).

To be sure, the Department of State did exercise limited independent discretion to procedurally meet the requirements of the Executive Order. For example, the State Department chose to rely on birth certificates and other documentation issued close to an applicant's birth to determine a passport applicant's sex under the Executive Order's definitions. *See, e.g.*, Stufft, Action Mem. (Feb. 6, 2025) at 2 (ECF No. 66-8 at 3). But the limited independent determinations made by the Department of State are not the agency actions that Plaintiff challenges. Rather than imposing limits on how the State Department may determine a person's biological sex under the Executive Order, Plaintiff seeks an injunction against the State Department's application of the Executive Order's definitions of biological sex at all. And the President, not the Department of State, set forth that policy pursuant to his own authorities.

With respect to Global Entry cards, there is an even starker absence of reviewable agency action apart from the Executive Order. Plaintiff has identified no independent regulation, guidance, or action by CBP—or any other agency—to "implement" or "flesh out" the Executive Order's requirements with respect to Global Entry cards. *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1326–27 (D.C. Cir. 1996). Because the only legal authority governing the challenged aspects of the purported "Global Entry Policy" is the Executive Order itself, Plaintiff "[can] not possibly [rely] on the APA for a cause of action." *Id.* at 1327 (concluding that the plaintiff may not bring an APA action where the agency had not promulgated regulations implementing the requirements of an executive order).

2.    The Executive Order is not arbitrary and capricious.

Even if Plaintiff could proceed with an APA claim, that claim would fail because Plaintiff has not identified any "agency action" that was "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). The Supreme Court has squarely held that other plaintiffs are "[not] likely to prevail in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." *Orr*, 146 S. Ct. at 46 (citing 22 U.S.C. § 211a). That determination is binding and correct. As noted, the Passport Act directs "[t]he Secretary of State [to] grant and issue passports . . . under such rules as the President shall designate and prescribe." 22 U.S.C. § 211a. Thus, the statute itself requires the Department to follow the President's "rules," *id.*, and the President need not provide a reasoned explanation for those rules because he is not subject to the APA, *see Franklin*, 505 U.S. at 801. Nor, obviously, is the Secretary of Homeland Security or CBP at liberty to disregard a directive from the President mandating particular definitions of biological sex on travel documents, including Global Entry cards.

Plaintiff contends that the Department of State made "no attempt to explain" the change in sex designations on passports and failed to consider "reliance interests." Mot. for Prelim. Inj. at 20–21. But because the Passport Act requires the Department to "grant and issue passports . . . under such rules as the President shall designate and prescribe," 22 U.S.C. § 211a, "the agency's path" was not just "reasonably . . . discern[ible]"; it was obvious—and mandatory. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted). Far from "entirely fail[ing] to consider an important aspect of the problem," *id.*, the Department considered the only aspect relevant here: that the Passport Act required it to follow the President's rules. That requirement rendered irrelevant any other consideration in following those rules. In short, because Congress instructed the Department to follow the President's rules, which are not themselves subject to APA review, it could not have been arbitrary or capricious for the Department to have followed the President's rules here by making the changes dictated by the Executive Order. *See Orr*, 146 S. Ct. at 46.[2]

Plaintiff also argues that CBP "fare[s] even worse" than the State Department because it did not provide any "explanation for the change" in its policy. Mot. for Prelim. Inj. at 21. But Plaintiff identifies no agency action by CBP other than its anticipated direct compliance with the Executive Order. Plaintiff cannot fault CBP for failing to explain something it has not done. And to the extent CBP later employs the Executive Order's biological definition of sex on Global Entry cards, its reasons for doing so would be readily "discern[ible]," *State Farm*, 463 U.S. at 43: it is mandated by the Executive Order, *see Orr*, 146 S. Ct. at 46.

---

[2]    In addition, Plaintiff fails to adequately articulate any particular "reliance interest" that the State Department should have considered. Plaintiff mentions only being "listed as the mother on her children's birth certificates," Mot. for Prelim. Inj. at 20, but does not explain how Plaintiff may have acted differently absent the Executive Order's requirement for passports to use biological sex.

Plaintiff insists that the Department of State and CBP cannot "rely on the Executive Order" as a substitute for providing independent reasons for their actions. Mot. for Prelim. Inj. at 21. But Plaintiff does not challenge any actions by the State Department or CBP other than their use of the Executive Order's biological definitions of sex. The reasons for those definitions are the President's, not the agencies'. Thus, unlike the cases Plaintiff cites, this is not a situation where the agencies "went well beyond" the provisions of the Executive Order in implementing it. *Drs. for Am. v. Off. of Pers. Mgmt.*, 793 F. Supp. 3d 112, 145 (D.D.C. 2025) (concluding that agencies had not reasonably explained implementation decisions apart from the terms of the relevant executive order, including timelines for compliance and directive to completely take down, rather than modify, websites with offending language); *see also Planned Parenthood of Greater New York v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-2453 (BAH), 2025 WL 2840318, at *28 (D.D.C. Oct. 7, 2025) (challenge to policy notice adding to executive order); *Gomez v. Trump*, 485 F. Supp. 3d 145, 178 (D.D.C.) (reviewing claim that the Secretary of State "expanded the scope" of presidential proclamation). Unlike those cases, Plaintiff here challenges the actions of the State Department and CPB only to the extent that they adopt the biological definitions of sex set forth in the Executive Order. And the reason for that change is clear: the Executive Order requires it. *See Orr*, 146 S. Ct. at 46.

Finally, even if the Executive Order and the changes that it dictates were subject to APA review, they are not arbitrary or capricious for the same reasons that they satisfy rational-basis review. *See infra* at 22–24.

### B.    The constitutional claims will likely fail.

#### 1.    The equal protection claim will likely fail.

The Supreme Court opined in *Orr* that "[d]isplaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the

Government is merely attesting to a historical fact without subjecting anyone to differential treatment." 146 S. Ct. at 46. That conclusion follows from well-settled precedent. Equal protection does not demand that a policy "necessarily apply equally to all persons or require things which are different in fact . . . to be treated in law as though they were the same." *Michael M. v. Superior Court*, 450 U.S. 464, 469 (1981) (plurality opinion) (alteration in original) (quotation marks omitted); *see United States v. Skrmetti*, 605 U.S. 495, 515 (2025) (holding that law that applies equally to each sex without treating any member of one sex differently from a similarly situated member of the opposite sex does not discriminate based on sex); *Nguyen v. INS*, 533 U.S. 53, 63-64 (2001) (explaining that equal protection is not violated by classifications that treat men and women differently where the two sexes "are not similarly situated," such as measures that "take[] into account a biological difference").

Plaintiff does not challenge the inclusion of a sex designation on passports or Global Entry cards generally and thereby accepts that there are "differen[ces] in fact" that justify distinguishing people based on sex on those documents. *Michael M.*, 450 U.S. at 469 (plurality opinion) (quotation marks omitted). What Plaintiff challenges is how the government determines a person's sex for purposes of that designation. The Executive Order determines every person's sex according to that person's "immutable biological" characteristics and prohibits the government from allowing anyone to self-select a sex marker based on "gender identity." 90 Fed. Reg. at 8615–16. It is that policy linking sex to immutable biological characteristics rather than identity that Plaintiff challenges here. The question is whether the Constitution requires the government to adopt Plaintiff's preferred definition of sex. As the Supreme Court determined in *Orr*, 146 S. Ct. at 46, it does not. At the outset, it is implausible that equal-protection principles constrain how the President exercises his constitutional and statutory prerogative to speak to foreign governments on

- 17 -

government property when identifying U.S. passport holders. And it becomes completely untenable where, as here, the challenged policy against self-selection does not discriminate against any suspect or quasi-suspect class and thus warrants only rational-basis review—which it easily satisfies.

(a)     <em>Rational-basis review applies because the Executive Order does not discriminate against a suspect or quasi-suspect class.</em>

Equal protection generally demands only rational-basis review, unless a policy discriminates against a suspect or quasi-suspect class. <em>See United States v. Skrmetti</em>, 605 U.S. 495, 509 (2025). Because the challenged policy does not so discriminate, heightened scrutiny is unwarranted. To the extent any review standard applies, it is the deferential rational-basis standard.

First, the Executive Order does not discriminate based on sex. It requires everyone's sex marker to reflect their "immutable biological classification as either male or female," rather than "self-assessed gender identity." 90 Fed. Reg. at 8615. In defining sex based on biology rather than self-identification, the challenged policy does not discriminate based on sex, because every government-issued identification document, for every individual, must reflect the same immutable biological characteristics, not purported "gender identity." <em>Id.</em> The Supreme Court has long recognized that sex discrimination requires treating members of one sex differently from "similarly situated" members of the opposite sex. <em>Nguyen</em>, 533 U.S. at 63; <em>see Michael M.</em>, 450 U.S. at 469 (plurality opinion). The Court recently reaffirmed that principle in <em>Skrmetti</em>. There, the Court rejected the suggestion that "mere reference to sex is sufficient to trigger heightened scrutiny." <em>Skrmetti</em>, 605 U.S. at 512. And the Court held that a law does not discriminate based on sex if it applies equally to each sex without treating any member of one sex differently from a similarly situated member of the opposite sex. <em>See id.</em> at 515 (emphasizing that under the challenged statute, "no minor may be administered puberty blockers or hormones to treat gender dysphoria, gender

- 18 -

identity disorder, or gender incongruence; minors of any sex may be administered puberty blockers or hormones for other purposes" (emphases omitted)). That is precisely the case here. Under the challenged policy, no one may self-select a sex marker based on "gender identity"; every sex marker, for any individual, must reflect immutable biological characteristics instead. The challenged policy thus applies equally to members of each sex—defining sex for everyone in terms of biology over identity.

By analogy, it would not be discrimination based on national origin to define a person's national origin as the country in which the person was born (say, India), rather than the country with which the person self-identifies (say, Pakistan for an Indian born in Kashmir). As the Supreme Court explained in *Orr*, it is similarly not discrimination based on sex for the challenged policy to determine a person's sex according to the person's "immutable biological" characteristics, rather than the person's "self-assessed gender identity." 90 Fed. Reg. at 8615; *see Orr*, 146 S. Ct. at 46 ("Displaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth[.]"). Plaintiff may prefer an identity-based definition of sex over a biology-based one, but the government's use of the latter is not sex discrimination.

Nor does the Executive Order discriminate based on intersex status. As noted, the Executive Order applies equally to all people. Both intersex and non-intersex persons may obtain a passport or Global Entry card, provided that they meet the relevant criteria, and both groups are required to use sex markers corresponding to their biological sex based on the same definitions. It is Plaintiff who seeks differential treatment—namely, a special accommodation that would allow Plaintiff to use a sex marker that corresponds to Plaintiff's gender identity rather than the biological categories set forth in the Executive Order. The government's decision not to allow such

- 19 -

preferential treatment cannot plausibly be characterized as "discrimination" based on intersex status.

Even if the Executive Order discriminated based on intersex status, heightened scrutiny would still be inappropriate because intersex people are not a suspect or quasi-suspect class. Plaintiff contends that intersex people satisfy a multi-factor test for recognizing such a class. Mot. for Prelim. Inj. at 28–32 (ECF No. 66-1). But that test has no basis in the text or original understanding of the Constitution, and the Supreme Court has "never embraced" a new suspect or quasi-suspect class under it. *Skrmetti*, 605 U.S. at 550 (Barrett, J., concurring) (emphasis omitted); *see id.* at 573–76 (Alito, J., concurring in part and concurring in the judgment) (observing that the Court has previously declined to recognize the poor, the elderly, illegal aliens, close relatives, and people with disabilities as suspect or quasi-suspect classes).

In any event, intersex people do not satisfy Plaintiff's preferred test. First, intersex people are not marked by the "obvious, immutable, or distinguishing characteristics" of a "discrete group." *Skrmetti*, 605 U.S. at 549–50 (Barrett, J., concurring) (quotation marks omitted); *see id.* at 574–76 (Alito, J., concurring in part and concurring in the judgment). In particular, the group of intersex persons "is not defined by a trait that is definitively ascertainable at the moment of birth." *Id.* at 550 (Barrett, J., concurring) (quotation marks omitted). Plaintiff did not learn of Plaintiff's own "difference of sex development" until Plaintiff was a teenager and only began "living as a woman" at that point. Jansen Decl. ¶¶ 8–11 (ECF No. 66-11). Nor is there anything "discrete" about intersex people as a group. *Id.* at 550 (Barrett, J., concurring) (quotation marks omitted). Plaintiff and Plaintiff's expert acknowledge that there are a "wide variety of intersex conditions," including differences in chromosomes or in physiological and anatomical features that may not manifest until after puberty. Mot. for Prelim. Inj. at 3–4 (citing Kauffman Decl. ¶¶ 16–20 (ECF

No. 66-12)). "The boundaries of the group, in other words, are not defined by an easily ascertainable characteristic that is fixed and consistent across the group." *Skrmetti*, 605 U.S. at 549–50 (Barrett, J., concurring).

Second, intersex people have not "suffered a history of *de jure* discrimination." *Id.* at 554 (Barrett, J., concurring); *see id.* at 574-76 (Alito, J., concurring in part and concurring in the judgment). Plaintiff focuses on alleged discrimination against intersex people at the hands of the "medical community" and during social interactions in their "daily lives." Mot. for Prelim. Inj. at 29–31. But "the relevant question is whether the group has been subject to a longstanding pattern of discrimination *in the law*." *Skrmetti*, 605 U.S. at 554–55 (Barrett, J., concurring) (emphasis in original). The "private discrimination" described by Plaintiff "does not provide a basis for inferring that state actors are also likely to discriminate and thereby violate the Constitution." *Id.* at 555.

Third, intersex people are not politically powerless. *Id.* at 576 (Alito, J., concurring in part and concurring in the judgment); *see id.* at 555-56 (Barrett, J., concurring) (noting that *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n.4 (1938), "equates political powerlessness with laws burdening those who lacked a vote"). Plaintiff notes that intersex people make up a relatively small percentage of the voting population. Mot. for Prelim. Inj. at 31. But there is no evidence that intersex individuals, "like racial minorities and women, have been excluded from participation in the political process." *Id.* at 576 (Alito, J., concurring in part and concurring in the judgment).

And finally, treating intersex people as a quasi-suspect class "would require courts to oversee all manner of policy choices normally committed to legislative discretion." *Id.* at 551 (Barrett, J., concurring); *see City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 445 (1985) (holding that individuals with mental disabilities are not a quasi-suspect class because

governments must have "flexibility and freedom from judicial oversight in shaping and limiting their remedial efforts").

(b)     *The Executive Order satisfies rational-basis review.*

Because the Executive Order does not discriminate based on sex or any other suspect or quasi-suspect characteristic, the only standard (if any) that could apply is rational-basis review. Under that standard, the government "has no obligation to produce evidence to sustain the rationality of" the Executive Order. *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993). Instead, the policy "is presumed constitutional," and the burden is on the challengers "'to negative every conceivable basis which might support it,' whether or not the basis has a foundation in the record." *Id.* at 320–21 (citation omitted). "Where there exist 'plausible reasons' for the relevant government action, '[the Court's] inquiry is at an end.'"  S*krmetti*, 605 U.S. at 522. The challenged policy easily satisfies this undemanding standard.

It was entirely rational for the President to decide that "'[g]ender identity'" "does not provide a meaningful basis for identification" on passports, while biological sex does. 90 Fed. Reg. at 8616. As the Executive Order explains, "'[g]ender identity' reflects a fully internal and subjective sense of self," "exist[s] on an infinite continuum," and may shift over time. *Id.*; *see id.* at 8615 (describing the "concept of self-assessed gender identity" as "fluid" and "ever-shifting"). For example, Plaintiff was formerly "assigned as a male" and did not begin "living as a woman in all aspects" of life until a teenager. Jansen Decl. ¶¶ 9–11 (ECF No. 66-11). Thus, "gender identity" is not a trait that is "immutable" or "definitively ascertainable at the moment of birth." *Skrmetti*, 605 U.S. at 550–51 (Barrett, J., concurring) (quotation marks omitted).

Given the "internal, fluid, and subjective" nature of "gender identity," the President rationally rejected it as a "basis for identification" in favor of a "biological" definition of sex—one grounded in facts that are "immutable." 90 Fed. Reg. at 8615–16. Other designations on U.S.

- 22 -

passports, such as a person's date or place of birth, similarly reflect immutable facts. A person cannot self-identify as having been born on December 31, 1969, in Richmond, if she was in fact born on January 1, 1970, in Raleigh, let alone on July 1, 1980, in New York. The President rationally decided that, just as a person may not self-select a date or place of birth, so too a person may not self-select a sex marker. And in the interest of uniformity, the President rationally decided to apply the same biology-based definition of sex throughout the federal government, making no exception for passports or Global Entry cards. *Id.* at 8616.

Plaintiff asserts that the Executive Order's biological definition of sex has "no rational application" to Plaintiff, because Plaintiff was born with sex chromosomal mosaicism, which is a combination of both male and female chromosomes. Mot. for Prelim. Inj. at 25–26. But the Order's definition of sex has nothing to do with chromosomes. It recognizes biological sex as tied to the function of producing reproductive cells. 90 Fed. Reg. at 8615. Plaintiff was born with "external male reproductive organs and testes," Jansen Decl. ¶ 8 (ECF No. 66-11), which is the reproductive system "that produces the small reproductive cell," 90 Fed. Reg. at 8615. The Executive Order rationally designates persons with that reproductive system at birth as "male," *id.*, which is the sex that Plaintiff was "assigned" at birth, Jansen Decl. ¶ 8 (ECF No. 66-11).

The Order also is not made irrational by the fact that Plaintiff's male reproductive system was "azoospermic" and "nonfunctioning." Mot. for Prelim. Inj. at 26. The government recognizes that some females and males "may not . . . produce eggs or sperm" due to factors including "congenital disorders or other developmental conditions." *Sex-Based Definitions*, https://perma.cc/JPB9-TJT9. The relevant factor, however, is the "biological function" of the reproductive system, which does not "require that eggs or sperm are ever produced." *Id.* Because the biological function of male reproductive organs and testes is to produce sperm, persons born

- 23 -

with that reproductive system are "male" under the Executive Order, whether or not they actually produce sperm. *Id.*

On the other hand, Plaintiff identifies no "biological" reason to designate Plaintiff's sex as "female" as opposed to "male." Plaintiff claims to have chromosomes associated with both the male and female sex but was born with only a male reproductive system. Designating Plaintiff's sex as male over female would therefore elevate "gender identity" over the "biological category of sex," which the Executive Order rationally concludes "does not provide a meaningful basis for identification." 90 Fed. Reg. at 8616.

### 2. The First Amendment claim will likely fail.

Plaintiff's First Amendment speech rights are not implicated because factual information on passports and Global Entry cards is government speech that is not attributable to the identification holder. "When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009)). Passports and Global Entry cards are government speech given "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022).

A United States passport is a "political document" issued by the federal government and "addressed to foreign powers" to "vouch[] for the bearer and for his conduct," *Agee*, 453 U.S. at 292, and it "at all times remains the property of the United States," 22 C.F.R. § 51.7(a). Similarly, Global Entry cards are issued by the United States government to convey to border officials that the holder is enrolled in a trusted traveler program and may obtain expedited entry over a land border or at a seaport. *Global Entry FAQ*, https://perma.cc/32PN-7D7L. The government also

retains control over the content of these documents. Indeed, "alter[ing]" a passport could result in criminal charges. *See* 18 U.S.C. § 1543. Given that passports and Global Entry cards are government-crafted communications about the holder, the content of those documents is government speech attributable only to the government. *See Doe v. Kerry*, No. 16- 0654-PJH, 2016 WL 5339804, at *16 (N.D. Cal. Sept. 23, 2016) ("The information contained in a passport is unquestionably government speech."); *Fowler v. Stitt*, 676 F. Supp. 3d 1094, 1105–08 (N.D. Okla. 2023) (sex marker on birth certificate is government speech), *aff'd in part, rev'd in part on other grounds*, 104 F.4th 770 (10th Cir. 2024), *cert. granted, judgment vacated*, 145 S. Ct. 2840 (2025).

Nothing about passports or Global Entry cards is "closely linked" with the holder in a way that would "make[] him appear to *endorse* the government's message." *Cressman v. Thompson*, 798 F.3d 938, 949 (10th Cir. 2015) (citation modified; emphasis in original). Contrary to Plaintiff's contention, it is not enough that the passport and Global Entry card contain Plaintiff's "personal information," Mot. for Prelim. Inj. at 34, because that information is nevertheless attributable only to the government given the context of the documents on which that information appears. Nor is it significant that passport holders may retake their photographs if they dislike them. *See id.* at 34. Passport photographs must nevertheless meet criteria "prescribed by the Department [of State]." 22 C.F.R. § 51.26. That the holder had the option to take a new photograph does not indicate that the holder endorses the overall content of and policy surrounding that uniquely "political document." *Agee*, 453 U.S. at 292.

3.    The substantive due process claim will likely fail.

Plaintiff is unlikely to succeed in arguing that the Executive Order offends a "fundamental right to privacy" against the disclosure of "personal, intimate information." Mot. for Prelim. Inj. at 35 (ECF No. 66-1). The Fifth Amendment to the Constitution protects certain fundamental rights, such as "the rights to marry; to have children; to direct the education and upbringing of

one's children; to marital privacy; to use contraception; to bodily integrity; and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). But "the [Supreme] Court has always been reluctant to expand the concept of substantive due process" because "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). "To that end, *Glucksberg*'s two-step inquiry disciplines the substantive due process analysis." *Id.* "First, it insists on a 'careful description of the asserted fundamental liberty interest.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721). "Second, it stresses that 'the Due Process Clause specially protects' only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 720–21). Accordingly, as discussed above, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994)).

There is no fundamental right to information privacy. Neither the Supreme Court nor the D.C. Circuit has "ever held that this interest is a constitutional right," and "[b]oth courts have, so far, steadfastly rejected all information privacy claims purporting to rest on the Constitution[.]" *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 72 (D.C. Cir. 2019). And there is no basis to newly establish an information-privacy right when it comes to displaying sex markers because self-selecting a sex marker is neither "deeply rooted in our history and tradition" nor "essential to our Nation's scheme or ordered liberty." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022). Instead, history shows that, "however important individuals may perceive the designation of their sex" on government-issued identification, "it is only recently" that some laws have permitted sex designations to conform to gender identity. *Gore v. Lee*, 107 F.4th 548, 562 (6th Cir. 2024).

Plaintiff does not even attempt to ground a fundamental right to self-select a sex marker in the country's "history and tradition" or "scheme of ordered liberty." *Dobbs*, 597 U.S. at 237. Instead, Plaintiff relies on inapplicable or unpersuasive cases, mostly from other jurisdictions. But the Supreme Court cases that Plaintiff cites never involved "a holding with respect to a banned type of disclosure" and do not help Plaintiff with "the specifics of this law" because "[n]o Supreme Court case remotely holds" that the government "may not preserve the historical fact" of "biological sex." *Gore*, 107 F.4th at 563. Plaintiff's other cited cases likewise lack analysis of how the substantive due process right asserted meets the *Glucksberg* standard for recognizing new, unenumerated substantive due process rights. *See, e.g.*, *Arroyo Gonzalez*, 305 F. Supp. 3d 325, 332–33 (D.D.C. 2018) (no discussion of *Glucksberg*); *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999) (same). Accordingly, Plaintiffs are unlikely to succeed on this claim.

III.    **The other factors weigh against a preliminary injunction.**

In staying the class-wide preliminary injunction against the Executive Order in *Orr*, the Supreme Court concluded that the relief caused irreparable injury to the government because it "enjoined enforcement of an Executive Branch policy with foreign affairs implications concerning a Government document." 146 S. Ct. at 46. The same is true of the injunction Plaintiff seeks here. It would dictate the contents of official government communications with foreign sovereigns and government officials. A passport in particular, after all, is a "document by which the Government vouches for the bearer and for his conduct." *Agee*, 453 U.S. at 293. By requiring the government to let members of the class self-select their sex marker, the proposed injunction would deprive the government of control over its own speech. *See* 22 C.F.R. § 51.7(a) (recognizing that a U.S. passport is government "property"). Even worse, the injunction would potentially force the government to misrepresent the sex of passport and Global Entry card holders by using markers that reflect "the false claim that males can identify as and thus become women and vice versa." 90

- 27 -

Fed. Reg. at 8615. On the other hand, as explained above, Plaintiff will not suffer irreparable harm absent an injunction because Plaintiff's passport (which displays a female sex designation) will remain valid until 2032. And Plaintiff need not carry or present a Global Entry card to use Global Entry at airports. The balance of equities therefore tips decisively against an injunction.

### CONCLUSION

For these reasons, the motion for a preliminary injunction should be denied.

Dated: April 27, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____ */s/ Johnny Walker* _____
JOHNNY H. WALKER, III
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2511

*Attorneys for the United States of America*

- 28 -