IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANA JANSEN,

Plaintiff,

vs.

DONALD J. TRUMP, et al.,

Defendants.
______________________________/

Civil Action No. 1:25-cv-2961

Washington, DC
July 2, 2026

11:03 a.m.

TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE LOREN L. ALIKHAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: CASSANDRA SNYDER
KYLIE BURKE
JAIME SANTOS
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036

LOUIS LOBEL
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210

TIMOTHY BEAVERS
Goodwin Procter LLP
620 Eighth Avenue, Suite 2052
New York, NY 10018

For the Defendants: JOHNNY WALKER, III
U.S. Department of Justice
Civil Division
601 D Street, NW
Washington, DC 20004

Court Reporter: JEFF HOOK
Official Court Reporter
333 Constitution Avenue, NW
Room 4700-C
Washington, DC 20001

**P R O C E E D I N G S**

**DEPUTY CLERK:** Good morning, Your Honor. We're now on the record for Jana Jansen vs. Donald J. Trump, et al., civil action 25-cv-2961. Counsel, please come forward and note your appearance for the record, beginning with the plaintiff.

**MS. SNYDER:** Good morning, Your Honor. Cassandra Snyder on behalf of the plaintiff. Joining me at counsel table today is Timothy Beavers, Jaime Santos, Louis Lobel and Kylie Burke.

**THE COURT:** Good morning to you all.

**MS. SNYDER:** Thank you.

**MR. WALKER:** Good morning, Your Honor. Assistant United States Attorney Johnny Walker for the defendants.

**THE COURT:** Good to see you; good morning. So we are here to discuss Plaintiff Jansen's renewed motion for a preliminary injunction. I have a series of questions for both sides, but I'll allow each party to make a few opening remarks before I dive in with those. I'm hoping to keep this hearing to about an hour and 15 minutes or so, so I will try to be mindful of the time.

So with that, I will start with your opening arguments from Ms. Snyder.

**MS. SNYDER:** Thank you, Your Honor. The government has tried very hard to make this case and this

preliminary injunction motion about gender identity. It's not about gender identity; it's about biology; it's about Ms. Jansen's literal DNA. The government doesn't dispute any of the biological evidence that we have put forth on the record. It hasn't submitted any of its own evidence. It hasn't explained how this indisputable biology is consistent with the challenged policies. Instead, it ignores that biology. But the government cannot erase intersex people like Ms. Jansen. It cannot ignore her biology or her lived experience for the past 30 years. It cannot force untrue words into her mouth about that biology. And it cannot force her to reveal the most deeply personal, intimate information about her body.

We ask this Court to grant plaintiff's motion for a preliminary injunction enjoining the travel document policies from enforcement against Ms. Jansen, including the executive order and the implementing agency actions.

**THE COURT:** So let me start with the passport. So her passport does not expire until 2032; is that correct?

**MS. SNYDER:** That's correct, Your Honor.

**THE COURT:** And is she likely to experience any sort of irreparable harm stemming from the passport before her passport expires?

**MS. SNYDER:** Ms. Jansen suffers from a risk of potential revocation or suspension of her passport. As the

Middle District of Alabama recently noted, I believe in a 2019 case, Doe v. Marshall, passports are very subject to theft, subject to loss. If she were to lose her passport, the routine timeline on the State Department's website right now is up to 10 weeks with subject to change. So she would be without any kind of passport for potentially months, potentially even longer than that.

**THE COURT:** I suppose if she were to lose her passport, is it your view that she would have to then reapply for a new passport and then that passport policy would apply to her?

**MS. SNYDER:** Yes, that's correct.

**THE COURT:** So in Orr, which I have some separate questions about, the injunction that the Supreme Court ultimately stayed excluded a plaintiff whose passport did not expire until 2028, finding that that individual was not experiencing irreparable injury.

So what is your argument to get around that?

**MS. SNYDER:** Yes, so first of all, sort of big picture, I'll note that the claims in Orr are fundamentally different arguments than the claims we're dealing with her. And as to passport revocation specifically, I believe that the Orr plaintiffs did not argue that the passport could be subject to suspension and revocation and so that argument was not before the court at that time.

**THE COURT:** All right, thank you. And then onto Orr. I understand that the claims there are slightly different, but what do I do with the Supreme Court's order staying it? You know, I think there's a lot of question within the courthouse, within academia about the effect of the Supreme Court's shadow docket orders. But I do believe in at least Trump v. Boyle, they sort of indicated that it informs how a lower court should exercise equitable discretion in cases.

So do you think that that -- the Orr stay has any effect on how I should be thinking about this case?

**MS. SNYDER:** I think the answer is pretty easy because the claims are so fundamentally different at their core. They look the same superficially because, of course, there is similarly an equal protection claim and an Administrative Procedure Act claim. But the arguments that were made in Orr were fundamentally about gender identity and transgender people. Those are not the arguments that we're making here today. We are arguing about intersex people and biology. And, again, we have put forward a significant amount of biological evidence that was not at issue in Orr and that the government here doesn't actually dispute. So that's the key difference between this case and Orr.

**THE COURT:** So certainly they're factually

different, but it strikes me that the effect of the executive order and how it's being implemented is sort of the same, right? You have documentation that has the gender that you identify as because it is your gender, and then you're being forced to revert back to a gender that was on your original birth certificate.

So what is it about being intersex versus transgender that affects the application of that policy?

**MS. SNYDER:** Again, I think it really turns on the difference between gender identity and intersex. The government doesn't dispute here that intersex people have specific biology that is atypical of typical traditional understandings of male and female. So it's just an entirely different category. And that's exactly what both our APA arguments and our equal protection arguments are really aimed at. It's not about gender identity. It's not about being able to choose your own sex marker. It's just about having the government recognize that intersex people have this indisputable biology that means that they don't fit into either the traditional male or female categories.

**THE COURT:** And unless you have anything more to say on Orr, I'd like to turn to the global entry policies. What is the current global entry policy? There's a lot of sort of talk about it; I tried to do some research online. But she has to renew her card in, I guess, it's November.

What does that look like?

**MS. SNYDER:** So the renewal application process is she goes online, she clicks a button to renew, and she submits updated information about her personal information, pays a fee and then it goes from there. It can take, I believe, up to 10 months to process a renewal application. It can take quite a while. And -- yes, that's the process.

**THE COURT:** And in doing that, my understanding -- and please correct me if this is wrong, is that the global entry gender marker conforms to the passport gender marker, so she would be able to use her current passport, which does not expire, to show that she is female for purposes of her global entry card.

**MS. SNYDER:** So this is one of the key problems with the executive order and the agency's implementing actions, is that they're just not really clear on that point. It's true that an individual, when applying for global entry and for reapplying for global entry, provides a passport. And it's true that Ms. Jansen's passport currently has a female sex designation. But the administration has made very clear, including in the State Department's issued guidance, that it has a specific view of sex, and that under that specific view of sex, female is incorrect. And that anytime they reissue a new passport or global entry document or other document mentioned under the

executive order, that they will reverted to their own view of sex. And they've indicated in those -- in the State Department policies, for example, you know, what they will do when they have conflicting information.

**THE COURT:** But when she applies for a global entry card, do you understand that the agency is asking for a birth certificate as opposed to just the passport?

**MS. SNYDER:** At this time, there's no indication that they are explicitly requesting a birth certificate. That's certainly within their power to do so, but it's not part of the normal global entry reapplication process, no.

**THE COURT:** And so then where is the imminency of the harm for both the PI purposes, but also, I guess, for standing, right? Because if she never has to show documentation that she believes to be incorrect in order to renew her global entry card, she can just use the current valid passport that has the correct marker.

How is she being adversely affected?

**MS. SNYDER:** So there's several layers of harm here. First of all, just the process of applying for a global entry card puts her at harm because the government has said -- or has at least strongly indicated in its papers to this Court that while it wouldn't prosecute Ms. Jansen for perjury if she puts male down on those application forms, it said nothing about if she puts female down on

those application forms. So right away she's put to this essentially perjury trap of either being compelled to speak that she is a male or forfeiting her constitutional rights and putting male.

**THE COURT:** Does the reapplication ask for a gender designation distinct from just providing your passport?

**MS. SNYDER:** Yes, I believe there is a personal information request in the global entry renewal form.

**THE COURT:** So you had other layers of harm, so I want to make sure you get to those.

**MS. SNYDER:** Yes. So, of course, that's just the application process itself. If and when she receives a card or is declined a card -- and I want to be very clear about what she uses the card for. This is not just a card that she uses to obtain global entry benefits. This is a card that she uses in her day-to-day life regularly, essentially as a replacement oftentimes for her driver's license. She uses it anytime she flies as a TSA identification. So this is a card that she uses very frequently.

We've put in a significant amount of evidence that Ms. Jansen will suffer or would be at risk of severe harm were she to carry a card that has a male sex designation. The government has not disputed any of that harm. Instead, it just says, well, it's fine because she can just stop

carrying the card. But she's used this card for almost 20 years now ever since she first entered into the program in its infancy in about 2009. It's been a part of her day-to-day life. The government can't come in and say, well, we know that you're going to be subject to significant harm if you use this card or we concede that you may be subject to significant harm if you use this card, but it's fine, you can just stop using it. That's a classic unconstitutional conditions problem. The government can't say -- you know, even a benefit to which Ms. Jansen is not entitled to, the government can't withhold that benefit on an unconstitutional basis.

**THE COURT:** Well, they're not withholding the benefit, right, they are just possibly requiring her to have a different gender marker on that card?

**MS. SNYDER:** Well, it's sort of an either or. Either she uses the card -- sorry, if she has a male sex designation on the card, if she uses the card, she's concededly subject to a risk of harm. Or even regardless, she is being compelled to speak that she is male. She is being compelled to reveal this very intimate information about her body. So all of these harms are kind of concomitant with her using a card that has male.

**THE COURT:** So I confess, maybe I'm just not very savvy, but I don't even know where my global entry card is.

I've certainly never used it to go through TSA. It's not valid identification to board a plane. It strikes me that she could use her driver's license, which has the gender marker of female. She could use her passport. So, again, in sort of the irreparable harm calculus, it's not like this is the only piece of identification she could have and that she would run into these risks.

So why is her voluntary choice to use this form of identification as opposed to other forms of identification that concededly have the correct gender marker sort of sufficiently harmful?

**MS. SNYDER:** So this is concededly sort of a unique case. I don't know if we would be here today if she were truly only ever using her global entry card for its purposes and there would be no problem with using her driver's license. But, again, she's used this global entry card instead of her driver's license very often for about 20 years because initially she didn't want to use her driver's license because it has -- obviously it has her address on it, and she had some safety concerns about using that card publicly. She has now recently, as of last year, been admitted into her state's address confidentiality program, which means she has a false address on her official driver's license.

But that address is very clearly not the city that

she lives in; it's very far from the city that she lives in. So it can still invite uncomfortable, awkward questions were she to use that. So she doesn't use the driver's license card very often because of that reason. And then as to --

**THE COURT:** What about a passport, which doesn't have an address?

**MS. SNYDER:** As to the passport, so, again, the same Middle District of Alabama court in 2019, Doe v. Marshall, wrote, you know, "A passport is a poor substitute for a driver's license," talking about a driver's license in that context. But, of course, I don't know if you remember, a global entry card looks essentially identical to a driver's license. The problem with a passport obviously is that it's bigger, it's cumbersome. You can't just put it into your wallet or your pocket. If you lose it, it's a much bigger deal, even for the average person.

For Ms. Jansen, if she loses her passport, obviously she's subject to having to reapply and potentially losing the female sex designation on her passport. So using her passport as sort of a daily identification tool is not something that's sort of a realistic option for her.

**THE COURT:** So assuming that I agree with that, then what is CBP's global entry policy at present? I know I sort of adverted to that earlier. You know, I confess, it's been a long time since -- maybe I need to renew mine for all

I know. We have guidance from the state, so we have the executive order, right. We have the State Department's implementation of that for the passport.

What do we have as it concerns global entry?

**MS. SNYDER:** CBP has concededly not made any policy public, but, of course, the executive order was issued over a year and a half ago now. All of the other agencies -- the executive order explicitly directed these agencies, including DHS, to comply with the executive order to issue implementing regulations. All of the other agencies have done so and did so immediately. I mean, the State Department's reaction was, I believe, a week, maybe even less than a week. So there's no reason to think that CBP has not issued these policies. And the mere fact that they haven't publicly issued anything shouldn't preclude Ms. Jansen from obtaining preliminary relief here.

**THE COURT:** I guess I'm wondering if that cuts the other way? Because it could be that CBP thinks, well, we just follow what's on the passport, so the State Department's guidance, you know, means that we don't need to do anything because we just follow what they have done, which gets you back to this pickle of her passport not expiring until 2032, which sort of cuts against either imminency for standing or irreparability of the harm at present.

**MS. SNYDER:** So notably, the government hasn't said that it would just look to Ms. Jansen's passport. It hasn't said even that it would look to her current birth certificate, which does say female. And we know that, for example, in the State Department guidance, they've specifically said that if there's any kind of conflicting information, that they will do additional investigation to ensure that the sex designation is consistent with the policy. We don't really know what that means, that additional investigation, and I think that is -- that's one of the major reasons here that Ms. Jansen is so concerned. There's a big black box about what's happening.

**THE COURT:** So your view is that CBP must be doing something that is going to have an effect on changing the gender marker on her global entry card. We don't know what that is. And we don't know -- I mean, I guess, do we know their policy pre the executive order? My understanding was that they just followed what the passport said, but we have no indication that that has changed?

**MS. SNYDER:** Well, we have an indication they were explicitly directed by the executive order to change their policy, and we have no reason to think that they haven't changed it consistent with that policy, including because the government has not indicated here -- has not indicated otherwise here.

**THE COURT:** And then, I think, in the briefing, there's some -- I don't know if it's -- I assume it's intentional, but sort of defining sex at birth versus sex at conception. And so how do you think the EO versus State Department guidance versus the mysterious, perhaps nonexistent, CBP guidance carry that out?

**MS. SNYDER:** So I think the most important point is that it doesn't matter which one CBP chose because they're both equally unreasonable, equally irrational, equally discriminatory. And I suspect -- we suspect that CBP has gone with the State Department's implementation. That's because the State Department made that change in explicit recognition that it was inoperable to use a sex at conception standard. There was just no way to tell what somebody's sex exception is, so they were going to use sex at birth instead. And by proxy, what they really mean is whatever the sex was listed on your first birth certificate.

**THE COURT:** And in the State Department's policy -- I know you say when there's conflicting information they can ask for more. But given that she's had a birth certificate since at least the '90s that shows that she is female, why would they have any indication, interest, desire to go and sort of peek behind that? And, again, I have to really commend Ms. Jansen on her documentation because I don't even know where my birth certificate is

frankly. But it seems like she would present this birth certificate that is 40ish years old.

Why would that not be good enough for the State Department?

**MS. SNYDER:** Well, that's exactly the question that we've been asking, Your Honor. These -- her federal and state documentation has all been consistent for, as you recognized, three decades. There's no reason to change it now. But the government has indicated in its papers that it does believe that Ms. Jansen should correctly have a male sex designation.

**THE COURT:** I mean, the government believes that, but I guess I'm wondering what about the implementation of these policies so that the agency action would actually force her to change that when her documentation is in order -- which I know we were talking about the differences between Orr and sort of gender identity versus intersex. I think sort of another difference from Orr that I think actually maybe hurts you is that her documentation has been consistent, and anyone looking at any of her documentation would recognize her to be female.

And so without some policy that the State Department is requiring when you renew your passport or CBP requiring when you ask for global entry that you present your original birth certificate, which I think would,

frankly, cause a lot of problems for a lot of people, where is the harm?

**MS. SNYDER:** I think it's helpful to zoom out for a moment and talk about the context that this has all arisen in. The government has repeatedly told us that it does not believe that transgender people or intersex people or anybody else that has a sex designation or identifies as a sex that is inconsistent with the government's view of sex, that those people are morally wrong; that those people lack character. I mean, we see this not just in this executive order, but also in, for example, the transgender military executive order and many, many other executive orders.

We see the D.C. Circuit in Talbott, just recently this past month, recognized that the military transgender executive order was riddled with animus. So there's no reason to think that the government wouldn't apply that very consistent policy to Ms. Jansen here. I mean, when somebody shows you who they are, believe them.

**THE COURT:** You know, I get that, and I'm very sympathetic that this is a policy that's driven by animus and one that I think, as you very rightly point out, is not consistent with biology given Ms. Jansen's intersex status. And so I think what makes it more difficult for me is how do we translate that into an APA claim, an irreparable injury claim, a standing claim when we know that all of her

documentation currently reflects her female gender. And other than we know that the government doesn't like that, we have no reason to believe that that's going to be sort of actionable in any way current. Does that make sense?

**MS. SNYDER:** Yes. I do think the key -- a key point here is that the government hasn't conceded that it would be fine for her to retain her documentation. I mean, it would have been very easy at the start of this case -- even before Ms. Jansen was appointed counsel in this case, it would have been very easy for the government to say, look, you know, we get that your documentation has been consistent for 30 years; your birth certificate has been -- has had a female sex designation for 30 years; you know, we'll just -- we'll make a one-time exemption for you. They have not done that.

And for better or worse, Ms. Jansen is now in the spotlight. Her name is known to the government. There's no reason to think that they would provide her with what is effectively an exemption, the exact exemption that they're fighting so strenuously against in this case.

**THE COURT:** I'm sorry, I know I'm sort of skipping around. Perhaps I'm not sufficiently caffeinated today. So flipping back to global entry because, to me, that seems the more irreparable piece because it does need to be renewed. I take your point that driver's license, passport, she has

problems with wanting to use those. It seems like the only thing that she would need a global entry card for specifically as opposed to it being a preference would be crossing, I think, it's like land borders. If she were going to drive to Canada, I suppose she could use her passport for that as well, right? The only difference is if she was in the global entry -- if she used her global entry, she'd be allowed to have sort of expedited processing as opposed to using as a standard passport; is that right?

**MS. SNYDER:** That's correct.

**THE COURT:** And does she have any plans to travel across any land borders or seaports?

**MS. SNYDER:** She has no imminent plans to travel. She has actually significantly pared-down her travel based on these policies.

**THE COURT:** And then turning back to Orr. Obviously that was a classwide relief claim, but the order did suggest or state that the government would be suffering a form of irreparable injury absent a stay. That seems to me to be directly applicable regardless of whether we're talking about intersex individuals or transgender individuals. And so what is your response to that?

**MS. SNYDER:** I think Your Honor hit on it exactly. That was in a class action context. The court's discussion of that harm was specifically in the class action context.

We have here a single individual plaintiff. It just doesn't implicate the same harms here.

**THE COURT:** I mean, why is that? I mean, what makes it distinct that it is an individual action? I mean, the harm would still be the same, right? Is it that the sort of magnitude of the harm is different because you're dealing with an individual plaintiff than a class?

**MS. SNYDER:** I think it's both magnitude and type and, again, I think it goes back to the differences between our claims and the Orr plaintiffs' claims. Again, those claims were really focused on gender identity that really gets more at the heart of the executive order itself. We are not challenging gender identity; we are not making any of those challenges. We don't dispute that sex is immutable. We don't dispute that, generally, sex cannot be changed. All we're asking here is for recognition of Ms. Jansen's indisputed biology, that as an intersex person, she has physiological characteristics of both male and female that simply don't apply -- or don't fit into the government's categories. So it's hard to imagine how the government could suffer harm here by simply recognizing biology that it doesn't even dispute in this case.

**THE COURT:** And given that the government doesn't dispute that biology and given we have this executive order, are there any agency actions you're aware of or policies

that despite the executive order are recognizing the existence of intersex people?

**MS. SNYDER:** Off the top of my head, no, but we're happy to look into that and provide additional briefing.

**THE COURT:** I mean, you don't have to boil the ocean, but if you do find something -- because I think what is interesting in trying to reconcile this with Orr is, yes, this is absolutely driven at animus for transgender individuals. Given that the government -- and maybe they'll stand up and dispute it, but given that they're not disputing the biology of being intersex, and -- you know, it strikes me that this was a problem that they maybe were not anticipating in creating the executive order that could be taken care of with some sort of guidance. And so if there is anything about that, it would be helpful for me to know.

**MS. SNYDER:** Yes, we will certainly look into that. I do think that kind of cuts to the core of our claims, again, that this wasn't -- this was just an entire ignoring of the existence of intersex people.

**THE COURT:** Well, I do want to turn to the merits. Obviously, sort of standing and the irreparable injury are kind of front of mind for me because of the posture that we're in. And that said, I would like to hear your views, I guess first on the APA. What are we reviewing under the APA and to what extent can we review under the APA?

**MS. SNYDER:** Yes, so this -- the government's APA argument would really amount to an astounding expansion of presidential power here. It would give the president effectively carte blanch to evade the APA anytime he wants just by issuing agency actions via an executive order and directing an agency to implement that. Just intuitively, that can't be the case. We also know from the D.C. Circuit that that can't be the case. The D.C. Circuit has twice very strongly suggested that the government's exact argument doesn't stand in both Chamber of Commerce v. Reich and Public Citizen, which stated, "Franklin is limited to those cases in which the president has final constitutional or statutory responsibility for the final step."

And then also, you know, we don't even need to get into the potentially more complicated question of whether an executive order or an agency action implementing an executive order can ever be reviewable. Because here we have -- the government has conceded that the State Department, at least, has exercised at least some limited amount of discretion here. And we have a long series of DDC cases that have recognized that where an agency exercises discretion in implementing an executive order, even if that executive order was pursuant to presidential authority, that those discretionary actions are subject to review.

**THE COURT:** So I'm definitely with you there. I

mean, I'm worried there is a Franklin problem about challenging the EO directly. I'm actually surprised this hasn't come up because I've had a lot of EO cases. But we, I think -- and I'll see what the government has to say about this, but policies implementing an EO seem like they do not create a Franklin problem. So I think that gets you to perhaps APA reviewability at the State Department, but then we get back to the fact that there's no CBP policy.

So what do I make of that?

**MS. SNYDER:** Well, I don't know that there's no CBP policy; I think there's just no public CBP policy. Our position is that there is a policy. Perhaps it's a custom and practice, perhaps it's formalized, but there must be a policy here.

**THE COURT:** All right. Is there anything more you want to say about the APA or do you want to turn to some of your constitutional arguments?

**MS. SNYDER:** I'm happy to move on, Your Honor.

**THE COURT:** Choose your own adventure. Where do you want to start?

**MS. SNYDER:** I would love to start with the First Amendment, if that works for you. So the only real dispute in the First Amendment case is this tension between the government speech doctrine and the compelled speech doctrine because the government doesn't really contest that there is,

in fact, compelled speech here. The argument is that regardless it's government speech, so it's fine. But government speech cannot trump compelled speech. Government speech cannot trump First Amendment rights. And to understand why, it's helpful to zoom out for a moment and talk about the animating concerns behind government speech.

Government speech, that doctrine is borne of the fact that when the government speaks through an authorized government agent expressing its own government views, it is definitionally necessarily not regulating its citizens. It's neither compelling the speech of its citizens nor restricting the speech of its citizens. So the government's speech doctrine isn't, you know, an exception or an immunity to the First Amendment, it just is a recognition that the First Amendment doesn't apply to that type of conduct, that type of purely government conduct.

**THE COURT:** And why is the identity marker on a global entry card speech at all?

**MS. SNYDER:** Well, first of all, the government doesn't contest that this is speech. We also know from cases like Olentangy that pronouns, for example, are speech. It also implicates just a general political and social debate about gender and sex and pronouns. I think the most important point is that the government, I believe, does not contest that this is speech.

**THE COURT:** So they may very well not, but I assume with your global entry card you get a number. You don't get to choose what that number is; it's a number that is assigned to you by the government. Is that number also speech?

**MS. SNYDER:** It would perhaps depend on the context. But even if it were speech, it would be hard to imagine that any plaintiff would have standing or injury to challenge something like that.

**THE COURT:** And how do these policies force Ms. Jansen to communicate the administration's message about sex and gender identity?

**MS. SNYDER:** So like the injury, it actually hits at two different levels. The first level is when she's actually forced to write down a particular sex designation on the application, she's effectively being forced to tell the government this is my sex at risk of a perjury charge. And then, of course, if she were to carry a card that has a male sex designation, you know, giving it to not only officials, but also in her daily life to non-government officials -- to, for example, people at her children's school when she picks her kids up, she is necessarily conveying not just that she is male, but she is conveying information about her transgender and/or intersex status. Because somebody looking at that card will see the male sex

designation and see her and realize there's a mismatch and understand what's going on.

**THE COURT:** All right. And then can we also turn to your Fifth Amendment claim.

**MS. SNYDER:** Yes.

**THE COURT:** That wasn't at issue in Orr; am I correct on that?

**MS. SNYDER:** That's correct, it was not at issue in the preliminary injunction in Orr nor was the First Amendment claim.

**THE COURT:** Right. So to me, this seems like perhaps your weakest claim. I don't know if you would concede that, but give me your best shot.

**MS. SNYDER:** Yes, so the right at issue here is the fundamental right to informational privacy. And more specifically, that right is at its peak when we're talking about the kind of deeply personal, intimate information about one's body that we're talking about here. This is a drastic departure from the prior cases that the Supreme Court and the D.C. Circuit have discussed the right to informational privacy for three main reasons.

First of all, in all three Supreme Court cases and both of the two D.C. Circuit cases, those cases recognized that there was only collection. There was no dissemination, and there was significant protections against dissemination

in all of those cases. There were statutory protections. In the Whalen case, the information was secluded in a specific room and destroyed after a number of years. In the D.C. Circuit cases, they had the protections of the Privacy Act, of course.

Here, there's not only no protections against dissemination, but dissemination is really the point of the policy, right. The point is to shame, is to call people out who do not conform to the administration's idea of sex.

**THE COURT:** And in those cases, the Supreme Court and D.C. Circuit sort of assumed about deciding that there was a constitutional right to informational privacy and then rejected those claims on the merits.

Are you aware of precedent that's either binding or persuasive that actually holds that there is a constitutional right to informational privacy as opposed to the kind of gymnastics that the courts did to overcome that question?

**MS. SNYDER:** So it's true that neither the D.C. Circuit nor the Supreme Court have affirmatively indicated that a right to informational privacy exists, but nearly every other court of appeals has found at some level that a right to informational privacy exists. I think the Second Circuit's case Powell, for example, is a great example of the kind of information that is found to be protected under

a right to informational privacy. But, again, the Tenth Circuit, the Ninth Circuit, I believe the First and Third Circuits -- the list goes on. We, of course, have a footnote in our brief. We'd be happy to submit additional briefing on that as well.

**THE COURT:** Oh, no. I mean, your footnote is sufficient, it's just, you know, as someone who was reversed by the Supreme Court earlier this week, I'm trying to make sure I'm orienting myself to the precedent that binds me unless and until they overturn it.

And then I know we finished on the APA claims. Is there anything else that you wish to address at this time? And I'll certainly give you time for rebuttal.

**MS. SNYDER:** I'm happy to talk more about the equal protection claim, but otherwise I'm happy to talk again at rebuttal.

**THE COURT:** Oh, it's true, we sort of skipped over -- in my notes, I had equal protection first, so why don't we talk for a few minutes about equal protection. Again, we're faced with Orr and what we do with Orr. It seems like the court thought that the government was likely to succeed on the equal protection claim. It strikes me -- again, I know the difference between intersex and transgender, but the policies that she is challenging appear to apply kind of equally to intersex people and transgender

people.

So how do we get around Orr?

**MS. SNYDER:** So not to be repetitive, but again, those core differences -- our equal protection argument just isn't the same equal protection argument that was made in Orr. We're not talking about gender identity. I think a good illustration of how different those two things are is the Supreme Court's analogy about place of birth and place of birth just being a historical fact that you can display. And setting aside the merits of that contention, that's just not applicable here.

Ms. Jansen, again, was born with both male and female sex chromosomes by effectively a matter of chance; she happened to have male on her original birth certificate. But it just can't be the case that the government has any interest in forcing Ms. Jansen to convey information that was effectively just a coin toss at the time of her birth.

**THE COURT:** So what if it were someone whose birth certificate had a name that they then subsequently changed, and the State Department wanted you to have your name at birth for some historical fact; same kind of equal protection claim?

**MS. SNYDER:** I think it would depend on the class that was being implicated there, perhaps. Potentially, if we're talking about birth names, I think that would go

perhaps more to -- well, if we're talking about birth names for an intersex person, then, yes, I think that would implicate the exact same problems as here.

**THE COURT:** And then the Supreme Court also rejected the animus claim based on the record before it. So it might be just sort of repetition of what you've said, but given that I think that there was animus motivating the executive order, and given that it seems like the administration was sort of not thinking about intersex people, what do we do with -- where is the animus here as opposed to just kind of unintended consequences perhaps of their actions?

**MS. SNYDER:** So I want to start with two points in particular. First, the Supreme Court did specifically say no evidence of animus on this record. We have provided significant additional evidence of animus in Dr. Kaufman's expert report. In addition -- and I've lost my train of thought; I'm sorry.

**THE COURT:** No, that's fine. You're certainly welcome to come back on rebuttal if you have your second point.

**MS. SNYDER:** Great.

**THE COURT:** Anything else before we wrap up?

**MS. SNYDER:** No, that's it, Your Honor. Thank you.

**THE COURT:** And I do want to take this moment to really thank you for taking on this pro bono appointment. I think this is a very complicated case, and I'm grateful to you and your firm for all of the excellent briefing and argument. So you are doing a real service to the Court, and I very much appreciate it.

**MS. SNYDER:** Thank you very much, Your Honor.

**THE COURT:** All right. Mr. Walker.

**MR. WALKER:** Good morning again, Your Honor.

**THE COURT:** Good morning.

**MR. WALKER:** I'd like to focus on a couple of the things that Your Honor also focused on, namely the irreparable harm issue and the applicability of Orr. Now, on irreparable harm, on the passport, there's really no imminent irreparable harm there because that passport will remain valid with a female sex marker until 2032. The only way that the plaintiff can try to come up with some irreparable harm with respect to the passport is through pure speculation.

The first is that the passport will somehow be lost or stolen. There's no indication that plaintiff has ever lost a passport before. There's no specific facts that would indicate that the plaintiff will for some reason lose this passport. So that's purely speculative. Obviously that's too thin a read on which to hang irreparable harm.

And the other is this assertion that the passport will be revoked. Not only is that speculative, it is directly contradicted by what we have in the record. The Stufft memorandum says, under no uncertain terms, that passports that currently do not have a sex marker that conform with the executive order will remain valid until it is time to renew them. Again, for plaintiff, that is 2032, so nothing imminent with respect to the passport.

**THE COURT:** And what about the fact that as of this lawsuit, you are now aware of her and the fact that this is an issue? Maybe that makes it slightly different from a general policy of not revoking passports or trying to enforce sex at birth.

**MR. WALKER:** It doesn't. The Stufft memorandum still applies. In the Orr case the plaintiff brings up, there's -- the government made some statements that it might change the passports there. Those were passports that were up for renewal and were new, and so the government was required to renew those or issue a new passport with a sex marker contrary to the executive order in that case because of the preliminary injunction. But that is not the situation plaintiff is in. Plaintiff has a valid passport until 2032.

Moving to the global entry card. Now, that one is up for renewal in November of this year. But the point

there is that there is no imminent harm connected with having a global entry card with a sex marker to which the plaintiff objects. Because the plaintiff will not have to present that global entry card to anyone, which is the basis for -- the primary basis for the irreparable harm that the plaintiff claims. The global entry card cannot be used to travel through an airport.

You can go through -- Your Honor seems to be a member of the Trusted Traveler Program, so you may know that you can go through that Trusted Traveler Program, present a passport at the kiosk and utilize the benefits of the program that way. The only thing you would need to use a global entry card for is coming into the United States over a land border, and there's no indication that the plaintiff is going to do that anytime soon. According to the address on the plaintiff's driver's license, the plaintiff lives very, very far from any land border between the United States and Canada or Mexico.

Now, the plaintiff has expressed a preference in some situations for using the global entry card over other forms of identification. But if we drill down into what's actually in the record and what the plaintiff actually says in the declaration, there's really no great harm associated with that. What the plaintiff says is that the plaintiff prefers to use the global entry card over a driver's license

because the plaintiff has a driver's license that is part of the state's sort of anonymous address program. But the only harm connected with that -- and by the way, the plaintiff says in the declaration, "I sometimes" -- "I often prefer to use the driver's license over a global entry card." There's no sort of uniform --

**THE COURT:** You mean vice versa, often prefers to use global entry?

**MR. WALKER:** Yes, yes, often prefer to use global entry over driver's license. There's no indication that that's always the case. And the only reason for that is to avoid, quote, awkward and uncomfortable questions about the fictitious city that the plaintiff is associated with in the anonymous driver's license. That's not really the kind of harm that warrants a preliminary injunction, just sometimes avoiding possible awkward questions.

**THE COURT:** So I'm jumping in, and I know I said I would give you some time, so I will make sure you have time to cover other things. But what is the global entry policy -- I guess, what was it before the executive order and what is it now? I mean, you don't seem to argue that -- or, I guess, you do seem to argue that the designation will change on the global entry card.

I'm just wondering, why do we think that is the case in the absence of any guidance that we're getting from

the agency?

**MR. WALKER:** If I could just go back, one other point I wanted to make about the use of identification. There's really no reason the plaintiff can't use the passport as opposed to the driver's license. There's not a dichotomy just between the global entry and the driver's license. But let me now address your question --

**THE COURT:** But she wouldn't be able to use the expedited global entry lanes crossing land borders with just the passport?

**MR. WALKER:** That's my understanding. You could certainly cross the land border into the United States with just a passport, but I believe you do need the global entry card. Though, my understanding is that there's an electronic chip in the global entry card that is electronically read, like an E-ZPass pass when you come across those lanes. But the real problem is that there's just no articulated plans to cross a land border or no articulated practice of regularly crossing a land border.

Going to Your Honor's question about what is the global entry policy. Right now, the global entry policy is the executive order itself. There is no other policy issued by CBP -- and I confirmed this as recently as yesterday, there's no separate policy issued by CBP other than the executive order itself. The executive order itself

obviously does make specific reference to global entry cards and does require that those cards display the biological sex as defined by the executive order, but that is it. The only applicable policy right now is the executive order. And, of course, the executive order is not subject to a direct challenge under Franklin because the president is not an agency for APA purposes.

**THE COURT:** And talk me through how she would go about renewing her global entry card with the existence of the EO.

**MR. WALKER:** So my understanding is the way it works is you go online -- as my friend said, you go online, you log in, and there is an option to change your personal information, including the sex on the card; that there are no instructions on the website about whether or how you need to do that. I can't tell you today exactly how that renewal process would work out for the plaintiff in November because just it hasn't happened yet. There's no ripeness with respect to a challenge directly to the renewal of that card.

**THE COURT:** And when you say that there is -- the global entry policy is the EO, is there anything on the global entry website that says, you know, you are subject to the EO?

**MR. WALKER:** No, there are no instructions on the website. There's nothing written or published implementing

the definitions of sex in the EO.

**THE COURT:** And so if she were to go and renew this, and she were to not change her personal information and everything was consistent with her passport, would she receive a global entry card with a female designation?

**MR. WALKER:** Again, that's the thing, I can't say. CBP has specifically asked me not to commit to anything because all of that is theoretical and hypothetical and none of that has occurred yet.

**THE COURT:** And so you take that to be a ripeness problem?

**MR. WALKER:** It's a -- yeah, I mean, to the extent that the plaintiff is challenging not receiving a card with the sex marker that the plaintiff wants, that's certainly unripe. So then we've got to look for a policy to challenge, but there is no CBP policy other than the executive order, and you can't challenge the executive order as an action of the president.

**THE COURT:** And why couldn't you, if it were the case that the EO says what it says and then CBP puts it on CBP letterhead and says this is our policy, does that not make it challengeable agency action apart from Franklin?

**MR. WALKER:** I don't think it is because I think the mere fact that the agency has done something to implement the policy -- or an executive order does not mean

that you can then challenge something that comes directly from the executive order. And this is precisely the approach that the Supreme Court took in Orr, right, when it opined on the arbitrary and capricious nature of the challenged action. It did not look at the executive order itself. It looked at the State department's implementation of the executive order and said simply, well, it's obviously not arbitrary and capricious to implement an executive order that they're required to implement. There was no sort of separate analysis of the executive order itself. And that's consistent with precisely the position we're taking here, is that unless you are challenging the implementation actions in and of themselves, it's just a disguised challenge to the executive order, which is not permissible.

**THE COURT:** Right, and then the Supreme Court says that if you're implementing it consistent with the order, then there's no arbitrary and capricious problem as it pertains to the agency action.

**MR. WALKER:** Yes, that's exactly what it said in Orr.

**THE COURT:** And what do I do with Orr, and to what extent does it bind or inform my analysis?

**MR. WALKER:** I think on the two claims that it addressed, it binds the Court quite firmly. What the Court said with respect to the arbitrary and capricious claim is

that it is not arbitrary and capricious to implement instructions from the president that are required to be implemented. There's nothing in there that turns on the fact that the plaintiffs in Orr were transgender and the plaintiff here is transgender and also intersex. The same is true with the equal protection claim. What the Supreme Court said in Orr is that the government is merely -- and this is a quote, attesting to a historical fact without subjecting anyone to differential treatment. Anyone includes individuals who are transgender as well as individuals who are both transgender and intersex.

I also want to take a moment at this point to address sort of the intersex aspect of this case because the plaintiff uses that quite a bit to try to distinguish this from Orr, but it really does not provide the distinction that the plaintiff claims. Intersex, particularly as the plaintiff is using that term, is extremely broad and encompasses a lot of conditions and aspects of individuals, as plaintiff's own expert attests. The intersex basis for the plaintiff's identity here appears to be this chromosomal mosaicism. But there's nothing in the expert report or in the medical documents cited by the expert that I've reviewed that would indicate why chromosomal mosaicism would dictate a female sex marker for this plaintiff.

The female sex marker for this plaintiff seems to

be purely a product of plaintiff's transgender identification. In fact, there's a Gale fact sheet that the expert cites that indicates that everyone has some degree of mosaicism, and that that mosaicism can manifest in a number of different ways and result in a number of different conditions. And as I say, there's nothing that sort of ties plaintiff's mosaicism specifically to the necessity of a female sex marker.

**THE COURT:** And so -- and this is -- I've been quite educated on the chromosomal genetics of it all. Is it your position that there's no one that can be truly intersex, that does not have both, you know, XX and XY chromosomes?

**MR. WALKER:** No, no, no, not at all. I don't dispute that. I'm just saying there's nothing that ties it -- I mean, a lot of the plaintiff's argument and the expert's testimony indicates, well, look, everybody is not binary black-and-white male, female. But plaintiff is not asking for some third sex marker, is not asking for an X sex marker. The plaintiff here is asking for a female sex marker, and there's nothing in the evidence -- there's nothing in the record that indicates why this chromosomal mosaicism as experienced by this plaintiff would warrant a female sex marker or why the government should have taken into consideration the fact of chromosomal mosaicism

generally.

**THE COURT:** All right. I mean, you seem to take as a given, ripeness challenge aside, that when she renews her passport or when she renews her global entry card, the designation is going to change; is that correct?

**MR. WALKER:** I can't tell you definitively what would happen. The executive -- the definition in the executive order, as applied to the facts that the plaintiff has presented in this case, seems to indicate a male sex marker for the plaintiff. But I cannot tell you how a renewal application would actually be adjudicated for either the passport or the global entry card because it just hasn't happened.

**THE COURT:** And in a pre-executive order world, when someone was going to renew their global entry card, what does CBP do to verify the information that is provided?

**MR. WALKER:** I don't know that it does anything -- I don't know that it would necessarily do that for every applicant. I know that for some applicants, sometimes the -- the court's website -- or CBP's website indicates that sometimes these applications could be adjudicated very quickly and sometimes they take a little bit of extra time to include some investigation. That investigation can include an interview. But I don't know exactly what would trigger that longer process and deeper inquiry.

**THE COURT:** Do you have any other points on sort of Orr or irreparable injury or do you want to turn to the merits?

**MR. WALKER:** I'm happy to move on to whatever else Your Honor would like to address.

**THE COURT:** Well, why don't we turn to -- I mean, I guess we've already discussed a bit of APA reviewability. But to what extent is Orr's APA conclusion binding or relevant to me as it concerns the APA challenge that she's bringing that is based on intersex versus transgender status?

**MR. WALKER:** As I say, I think it's binding because, I mean, the reasoning applies equally in both situations, which is that agencies are not arbitrary to implement instructions from the president that they're required to implement. Nothing about that reasoning changes when you throw in the fact that the plaintiff has an intersex identity, particularly, as I said, an intersex identity that is not tied in the record to the requirement for a female sex marker.

I did want to take the point, as you anticipated, Your Honor, just to dispute the conclusion that there was any animus behind the executive order. The executive order's rationale with respect to using biological sex at birth as a sex marker indicator is spelled out in the

executive order. It's simply to provide a more reliable, immutable basis for identification. The Supreme Court did find in Orr that there was no animus behind this executive order. The plaintiff tries to draw some distinction between the record in Orr and the record here because we have the Kaufman declaration here. I don't know that Kaufman addresses any statements or materials that were not addressed by the separate expert in Orr or otherwise presented to the Orr case. So we think that the Supreme Court's conclusion that there was no animus behind this executive order does stand.

**THE COURT:** And do you want to turn to the constitutional claims?

**MR. WALKER:** Sure. These are the nonoverlapping constitutional claims, which are the First Amendment claim and the substantive due process claim. I want to -- those were not at issue in Orr at the preliminary injunction stage, but those are claims that are at issue in Orr and are being briefed on summary judgment currently. So those are presented, but they were not part of the -- they were not presented as a basis for the preliminary injunction.

So I'll address the First Amendment claim first. And I think what the crux of our dispute on the First Amendment claim really turns on is whether or not this is speech that can be attributable to the plaintiff or that

appears to have been endorsed by the plaintiff. So in all of the cases dealing with compelled speech, there is that element. In the Cressman case out of the Tenth Circuit that the plaintiff relies on quite a bit, they specifically say the question is whether or not the plaintiff can be perceived to endorse the message.

And in Wooley, the Supreme Court case, what you had there is this individual -- it was a license place, the New Hampshire live free or die license plate. And the Supreme Court characterized that as requiring individuals to use their private property to convey the government's ideo -- sort of subjective message to the public at large. That is not at all what is going on with these government identification documents. These are documents that are issued by the government according to the government's prescriptions, and they're for use primarily by other government officials.

The passport is a communication from the government of the United States to foreign governments about the individual who is holding the passport and their ability to travel. That's specifically characterized as that by the Supreme Court. The Code of Federal Regulations makes clear that the passport is property of the government. So there's no reason to think that this document, which contains a biological fact intended to be conveyed to other government

actors, is in any way seen as an endorsement or a statement by the plaintiff here.

The same is true of the global entry card. The global entry card is only presented to border officials during land crossings. This is information that the government is essentially conveying to its own border officers about the individual's identity and ability to cross the land border. It is not an ideological statement by Jansen to the public at large, and so it is not something that can be seen as endorsed or as an expression of Jansen's own views.

**THE COURT:** And is the global entry card government property as well?

**MR. WALKER:** I don't know one way or the other about that. I'm not aware of any specific regulation like you have with passports that specifies it to be government property.

**THE COURT:** But why couldn't the same arguments be made about a license plate? It is a way that the state is telegraphing to other state agents that this person has the ability, the car's registered and they're allowed to drive it.

**MR. WALKER:** There's two big differences with the license plate issue in Wooley. One is that this is not an ideological message -- that's the word I'm looking for.

It's not an ideological message; it is a biological fact about the plaintiff's sex at birth. And the second is that it is not -- there's no use of property as a billboard as there was in Wooley, right. This is not something that's being conveyed to the public at large. Jansen's property is not being employed in order to do it. And so it's a far -- it's just government-issued documentation that is conveyed -- that conveys information from the government about the individual to other government officials and foreign governments.

**THE COURT:** So the basis of your saying it's not ideologically motivated is the lack of animus from the Supreme Court in Orr?

**MR. WALKER:** No, I don't think it turns on animus, it just turns on what is conveyed by that sex marker. What is conveyed by the sex marker is the holder's sex at birth.

**THE COURT:** Right, but what is the interest the government has in knowing the holder's sex at birth as opposed to their sex as documented on their current documentation?

**MR. WALKER:** It is just it is a more reliable identification metric than gender identification. The executive order explains that it -- that the sex at birth is an unchangeable fact, it is an immutable fact, whereas gender identification is internal, it's subjective and it's

subject to change. And so the more immutable fact is a more reliable identifier.

**THE COURT:** So let me give you the hypothetical of women who change their names when they get married. Why would it be a more reliable marker to have your name as on your original birth certificate at birth rather than the name that is on your current birth certificate and Social Security card and passport and things of that nature?

**MR. WALKER:** With respect to a name, then I think it's also reasonable to say that it's -- you can identify somebody by their current name as opposed to a last name. You could also identify somebody in some respects by reference to a former name; you could even have both. But I don't think the question there is what's more identifying, it's just is it identifying. And current name is an identifying aspect, and that's what the government wants to put on these documentations, is information that can be used to identify the holder.

**THE COURT:** Right, and so I think that the government would think that people's current identification with their name and all of that would be more accurate, so then it strikes me that there is an ideological component to determining that it's the sex at birth that is the thing that is more reliable than, you know, the current state of affairs on the documentation, which is what they're going

with with everything else that's identifying about the person.

**MR. WALKER:** The only basis for that provided in the executive order is the unchangeability of the sex at birth and the fact that it is immutable, and gender identity as opposed to that is internal, subjective and changeable.

**THE COURT:** Well, like, my name at birth was also immutable and unchangeable, right? It was my name at birth. But I could certainly change that name and then it would be different. So why is that not the case with gender as well?

**MR. WALKER:** Well --

**THE COURT:** It's a historical fact -- I mean, I have not changed my name. But in the hypothetical where I have, right, it's a historical fact that I had name A and now I have name B.

**MR. WALKER:** I think you can be identified with both a former name and a current name. I think with respect to gender, I mean, if you're -- I mean, the explanation is what it is, which is that it is more immutable -- that sex at birth is more immutable than current gender identity.

**THE COURT:** And what is the government's interest then in having someone present a piece of identification with a gender marker that absolutely does not conform to their other identification or their physical presentation?

**MR. WALKER:** Well, once the executive order is

fully implemented, it will conform to all other forms of federal identification. Obviously, there's nothing that the federal government can do about state-issued identification, but that's already all over the map, right. There are some states that permit self-selection of gender markers and other states that don't.

**THE COURT:** All right. And then the other piece about Wooley was -- you say it's ideological, but isn't live free or die just the state motto? Why is that not just a historical fact of a state motto?

**MR. WALKER:** Well, they're not just saying it's the state motto, it is an expression. The individual in Wooley was a religious person who did not believe that living free was preferable to dying and so objected very strongly to the message and did not want to use that individual's property to convey it to the public. So that is a much more ideological context than biological fact on government-issued identification to be used by other government officials. I mean, the government is entitled to determine what information it would like to know about someone in order to assess that person's identity to travel into the country, right.

And so what you're really seeing here is not the government trying to compel speech by the plaintiff. The plaintiff is trying to compel the speech by the government,

what the government wants to tell itself about this individual.

**THE COURT:** So in the reply brief, Ms. Jansen asserts that you aren't disputing that it's speech to which Ms. Jansen objects and it is compelled. Do you agree with that?

**MR. WALKER:** I think we would object to it being compelled. We have not objected to it as being speech. We're not going to concede it for all time on a preliminary injunction motion, but we have not objected to it being speech. We have objected to it being attributable to the plaintiff or viewed as endorsed by the plaintiff. So whether or not it's speech, it's not the plaintiff's speech.

**THE COURT:** And then do you want to touch on the Fifth Amendment claim?

**MR. WALKER:** Yeah, so the substantive claim, we think, is a pretty weak claim. Now, the plaintiff presents some cases, particularly district court cases from other jurisdictions, that reference this, but the court of appeals in this jurisdiction, the court that sits upstairs in this building, has been highly skeptical of an information privacy claim. It said in the American Federation of Government Employees it has grave doubts as to the existence of a constitutional right to privacy. It reiterated those doubts in the In Re: OPM Security Breach litigation.

What it said in the In Re: OPM Security Breach litigation is that it's not inclined to find some right unless there's a plaintiff that can satisfy the Glucksberg analysis and demonstrate that this is a right that's deeply rooted in the nation's history and tradition. And the Sixth Circuit recently in 2024, in the Gore vs. Lee case, did quite a deep dive into the nation's history and tradition and found that self-selection of sex markers and self-selection of sex identification on government documents is relatively recent.

And plaintiff also paints it that way in the equal protection analysis, saying that this is relatively a recently recognized right. I think they mention in the last 30 years, but you need something that's much more deeply rooted than 30 years to satisfy Glucksberg analysis. So because the plaintiff did not even try to independently satisfy that Glucksberg analysis, under the circuit court's decision in the In Re: OPM Security Breach litigation, there's no basis to find a Fifth Amendment right to informational privacy.

**THE COURT:** So as a historical matter, how long have we had birth certificates or sex assigned at birth? That seems to be a relatively recent records phenomenon.

**MR. WALKER:** I've seen that somewhere. I know that the Gore court looks at it. I can't give you a precise

date. But certainly with respect to passports, it was only in the '70s that any sort of sex marker was permitted to -- alternate sex marker was permitted to be used, then only with the sexual reassignment surgery. And it was only in the '90s that self-selection was permitted in the use of an X marker.

**THE COURT:** I guess I'm just wondering how that cuts with the Glucksberg analysis if it's a thing that didn't used to exist but has been consistent in its existence?

**MR. WALKER:** Well, apart from birth certificates, I don't know if there are other forms of identification or -- apart from government-issued identification, just identification documents generally. But certainly I don't think there's been any demonstration in any document that there was an ability to self-select a sex designation. And the Gore court, after a fairly thorough analysis, found that there was not. In this case, there's no analysis of that whatsoever from the plaintiff.

What the plaintiff asserts instead in their reply is that they are not asserting a new right. Well, that's not how the D.C. Circuit characterized it. The D.C. Circuit noted that the Supreme Court has never recognized a fundamental right to informational privacy, and the D.C. Circuit has not recognized a fundamental right to

informational private. So it is quite a new right.

**THE COURT:** Well, then let me ask you the flip side of the question I asked your friend, which is they have assumed without deciding to reach the merits of the question. So would you have an objection to that? And there are also other circuits that have recognized a right kind of affirmatively.

**MR. WALKER:** When the court has assumed without deciding whether or not to recognize a right, it had an argument that the policy in question satisfied heightened scrutiny that would be triggered by a quasi suspect class -- or, I'm sorry, by the existence of a fundamental constitutional right. We have not made that argument here. So the question is more firmly presented to the court. I think it has to decide whether or not there is a fundamental right. But there's really nothing to decide because the D.C. Circuit has said that there is not. It has spelled out what needs to be demonstrated in order to find such a right, and it has not been demonstrated in this case.

**THE COURT:** And did you want to talk about equal protection?

**MR. WALKER:** Yes, I can talk about equal protection. Again, we think that Orr says quite plainly that this does not discriminate against anyone. Anyone includes this plaintiff in this case as well as the

plaintiffs in that case. We think that analysis is correct. We think it is binding at the preliminary injunction stage. We also point to Justice Barrett's concurrence in the Skrmetti case analyzing whether or not transgender individuals constitute a new quasi suspect class. The Supreme Court has only ever found three classes with any suspect whatsoever, and that's race, sex and alien age. Never concluded that any other class meets a suspect class definition.

We think Justice Barrett's analysis as to why transgender individuals do not constitute a quasi suspect class applies with respect to this plaintiff who identifies as both transgender and intersex. And really, that analysis can stop at the first step, as it could in Skrmetti, with the sort of discrete nature of the group. So to have a suspect class, you need a group that is discrete and definable, and plaintiff's own expert characterizes intersex individuals as a wide variety. It's a large umbrella of many different people with many different characteristics.

Even within that, individuals with chromosomal mosaicism, right, the literature makes clear that everyone has some degree of mosaicism and it manifests in many, many different ways. So there's no group here with the sufficient discreteness to be characterized as a quasi suspect class.

**THE COURT:** So I take your reliance on Barrett's concurrence, which, again, is only a concurrence about being relevant to transgender. And I hear what you're saying about intersex individuals, but it strikes me that intersex individuals would fall into the preexisting category of sex, right? Transgender might not because that's about gender identity. That's why Skrmetti comes out the way Skrmetti does.

But like, you know, here, for example, let us say we have someone who just has a -- their birth certificate is just wrong, right. The person is born biologically, you know, non -- like chromosomally just a woman, right, and it's designated as male because the resident is tired.

Would they not have a right to be recognized as female?

**MR. WALKER:** You know, I think intersex, to the extent it is -- it is a separate group. I mean, you can have someone who's intersex but also belongs to the male or female sex, right. So I don't think that it necessarily falls into the already existing quasi suspect class having to do with sex because it is distinct from that. And I think that's part of the plaintiff's whole argument, right. They rely very much on their assertion that intersex characteristics are distinct from sex.

**THE COURT:** Is there anything else that you would

like to cover?

**MR. WALKER:** I don't believe so, unless Your Honor has any further questions?

**THE COURT:** Not at this time. Thank you very much.

**MR. WALKER:** Thank you.

**THE COURT:** All right. Ms. Snyder, I'll give you some time for rebuttal.

**MS. SNYDER:** So I'm happy to answer any questions Your Honor might have, but otherwise I have a few quick points. First of all, we are -- to the extent that CBP doesn't have a formal policy, even a formal policy that hasn't been published, we are bringing an APA pre-enforcement challenge to CBP's decision. The government has now indicated that although CBP cannot commit either way to which gender marker would show up on her global entry card, that, again, the proper marker under the government's policy would be male. This harm is imminent. Again, she is due for renewal in November. It's also worth noting, again, that even applying for global entry here causes harm. She's being put to this -- again, this perjury trap. Either she's compelled to speak that she is male or she is potentially going to be prosecuted for perjury.

Two quick points. The government does have prior evidence of Ms. Jansen's sex before she was able to change

the sex designations on her federal government identification cards, both through the 1990s application that she provided to the State Department to initially change the gender markers from male to female and also through her Social Security records. The government indicates that perhaps --

**THE COURT:** Sorry, what is the relevance of that? So your view is that if she goes on to apply for her global entry card and doesn't change anything, that they're going to somehow go into the records department and find her original Social Security card?

**MS. SNYDER:** It's certainly possible, Your Honor. Again, they now know her name from this lawsuit. They've indicated, at least through the State Department implementing guidance, that if there's conflicting information, that they'll do their own investigation. Again, not clear what that means, but certainly investigating another agency's records would be available to them.

**THE COURT:** And is that kind of a subsidiary of your perjury trap argument or is that even if she submits her documentation as it currently stands, they might countermand that?

**MS. SNYDER:** Exactly, just supporting the government's own statements that the correct sex designation

under the government's policy would be a male sex designation. Third, it's also worth noting, so the government has indicated that perhaps reliable identification is a justification for this policy. It's not clear how that -- how reliable identification is actually furthered by this policy. Again, her state -- to the extent that the government is arguing that sex markers should be consistent across federal records, well, forcing her to have a global entry card with a male sex designation would be inconsistent with her passport, which will still have a female sex designation for the next six years. And it will, of course, be inconsistent with all of her state, federal identification documents. And there's certainly no argument that there's some interest furthered in physical appearance identification because, again, Ms. Jansen's physical appearance is woman -- is as a woman.

**THE COURT:** I find that to be the hardest point for the government. I don't know what benefit they get by insisting on this.

**MS. SNYDER:** Exactly, Your Honor. Two last points very quickly. The government has indicated -- the government argues that there's no reason that chromosomes should dictate one's sex marker. It's really a circular argument. Of course, under the government's own policy, chromosomes don't dictate a sex marker, but a proper

consideration of sex considers all biological and physiological traits, of which chromosomes are the most -- arguably the most inherent biological trait.

And then finally, just very quickly, I'd like to address a few of the animus points that we've included in Dr. Kaufman's expert report that were not included in the Orr plaintiffs. That includes information about May Mailman's tweets. She's one of the drafters of the executive order. She has a series of tweets that are -- exude animus towards transgender people and other people who don't conform to the government's views of sex. We have evidence of the government removing Rachel Levine's -- the name on her portrait, Admiral Rachel Levine, and replacing it with her dead name. And finally, we have evidence of the government, for example, removing the T and the transgender from LGBT -- the website for the Stonewall Monument. Those are just some of the evidence of animus that we've included in Dr. Kaufman's report.

**THE COURT:** And so in your view, the way around Orr and its animus would be to say that there is new information that was not part of the record before the court in Orr?

**MS. SNYDER:** Exactly. And I think it would also be helpful to look, again, to the D.C. Circuit's recent case in Talbott indicating that there was animus in the

transgender military executive order.

**THE COURT:** Sorry, do you have offhand the ECF number for the Kaufman report? I thought I had a question about that and now, of course, I'm digging through my binder.

**MS. SNYDER:** I can have it for you in a moment. 66-12, Your Honor.

**THE COURT:** Ah, I was at 66-11, so there we go.

**MS. SNYDER:** One more.

**THE COURT:** Something occurred to me this morning that didn't make it into my notes.

**MS. SNYDER:** And I'm happy to provide pincites for you, if that would be helpful.

**THE COURT:** If you'll just indulge me while I see where I scribbled my notes. So your animus argument's beginning on page 24 of 66-12; is that right?

**MS. SNYDER:** I believe so, at paragraph 44.

**THE COURT:** Yeah, so I guess my question was, was none of this before the court in Orr at the PI stage or was some of it?

**MS. SNYDER:** We'd be happy to submit briefing clarifying exactly what was and what wasn't. I believe most of that was not.

**THE COURT:** Okay. Yeah, if you could, just for the paragraphs that she talks about animus because it would

be useful. And I know Orr is now in a summary judgment posture. I'm sure more of this is going to get there. But in thinking about what to do with the Supreme Court's decision in Orr and the finding of no animus, it would be useful for me to know. And my clerk could certainly do that work, but I think you probably have it in your notes somewhere that if you could submit, I'd appreciate it.

**MS. SNYDER:** Absolutely, Your Honor. It also might be worth noting, actually as of yesterday, the district court in Orr has stayed the summary judgment briefing and they intend to proceed with discovery. You might also be already aware of that.

**THE COURT:** And Mr. Walker just stood because he had something to say.

**MR. WALKER:** I was just going to request if the plaintiff is going to file something, that we be given a chance to file a few pages in response.

**THE COURT:** Absolutely. Is there anything else that you want to discuss? Then we can set a schedule for that.

**MS. SNYDER:** Not unless Your Honor has anymore questions?

**THE COURT:** No. So then let's turn to some supplemental briefing. I know there were a few other things you said you wanted to supplement. I really don't think at

this point I need anything other than it would be beneficial to know what evidence of animus was before the court in Orr.

So mindful that we are heading into a holiday weekend, would it be possible for Ms. Jansen's counsel to get me sort of their understanding, and really just in paragraph by paragraph, you know, which tweets were before the court in Orr versus not by July 10th?

**MS. SNYDER:** Absolutely, Your Honor.

**THE COURT:** And then Mr. Walker, I know you're in a lot of these cases. Would July 17th work for you for a response to that?

**MR. WALKER:** Yes, Your Honor.

**THE COURT:** And I'm not looking for any argumentation, I really just want to have a sense of the factual record. Obviously these things are fast moving, and I want to make sure that I am being faithful to what the Supreme Court is telling us while also being mindful that this is a record that is different than what was before the court in Orr.

**MS. SNYDER:** Absolutely.

**THE COURT:** Well, thank you very much. I very much appreciate the briefing and the argument. Again, I really appreciate you and your firm taking this case on. The Court really values pro bono appointments, especially in a case like this, which started out being pro se. Having

the benefit of really thoughtful briefing is just so, so useful to me, so thank you to all counsel. This matter is adjourned.

(Proceedings adjourned at 12:25 p.m.)

# CERTIFICATE

I, **Jeff M. Hook, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

July 6, 2026 — DATE

[signature] — **Jeff M. Hook**

**DEPUTY CLERK: [1]** 2/2
**MR. WALKER: [41]** 2/13 31/9 31/11 32/14 34/9 35/2 35/11 36/11 36/24 37/6 37/12 37/23 38/19 38/23 40/14 41/6 41/17 42/4 42/12 43/14 45/14 45/23 46/14 46/21 47/9 48/3 48/11 48/16 48/25 49/11 50/7 50/16 51/24 52/11 53/8 53/22 55/16 56/2 56/6 61/15 62/12
**MS. SNYDER: [63]** 2/7 2/12 2/24 3/20 3/24 4/12 4/19 5/12 6/9 7/2 7/14 8/8 8/19 9/8 9/12 10/16 11/12 12/7 13/5 14/1 14/20 15/7 16/5 17/3 18/5 19/10 19/13 19/23 20/8 21/3 21/16 22/1 23/10 23/18 23/21 24/19 25/6 25/13 26/5 26/8 26/14 27/19 28/14 29/3 29/23 30/13 30/22 30/24 31/7 56/9 57/12 57/24 58/20 59/23 60/6 60/9 60/12 60/17 60/21 61/8 61/21 62/8 62/20
**THE COURT: [103]**

**'**

**'70s [1]** 52/2
**'90s [2]** 15/21 52/5

**0**

**02210 [1]** 1/16

**1**

**10 [2]** 4/5 7/6
**100 [1]** 1/16
**10018 [1]** 1/19
**10th [1]** 62/7
**11 [1]** 60/8
**11:03 [1]** 1/6
**12 [2]** 60/7 60/16
**12:25 [1]** 63/4
**12:25 p.m [1]** 63/4
**15 [1]** 2/20
**17th [1]** 62/10
**1900 [1]** 1/13
**1990s [1]** 57/2
**1:25 [1]** 1/4
**1:25-cv-2961 [1]** 1/4

**2**

**2 [1]** 1/5
**20 [2]** 10/1 11/17
**20001 [1]** 1/25
**20004 [1]** 1/22
**20036 [1]** 1/14
**2009 [1]** 10/3
**2019 [2]** 4/2 12/8
**2024 [1]** 51/6
**2026 [1]** 1/5
**2028 [1]** 4/16
**2032 [5]** 3/19 13/23 31/16 32/7 32/23
**2052 [1]** 1/18
**24 [1]** 60/16
**25 [1]** 2/4
**25-cv-2961 [1]** 2/4
**2961 [2]** 1/4 2/4

**3**

**30 [5]** 3/10 18/12 18/13 51/14 51/15
**333 [1]** 1/24

**4**

**40ish [1]** 16/2
**44 [1]** 60/17
**4700 [1]** 1/24
**4700-C [1]** 1/24

**6**

**601 [1]** 1/21
**620 [1]** 1/18
**66 [3]** 60/7 60/8 60/16
**66-11 [1]** 60/8
**66-12 [2]** 60/7 60/16

**A**

**a.m [1]** 1/6
**ability [4]** 44/20 45/7 45/21 52/16
**able [4]** 6/17 7/11 35/8 56/25
**above [1]** 64/5
**above-entitled [1]** 64/5
**absence [1]** 34/25
**absent [1]** 19/19
**absolutely [6]** 21/8 48/23 61/8 61/18 62/8 62/20
**academia [1]** 5/5
**according [2]** 33/15 44/15
**accurate [1]** 47/21
**across [3]** 19/12 35/17 58/8
**Act [2]** 5/16 27/5
**action [11]** 1/3 2/4 16/14 19/24 19/25 20/4 22/16 37/18 37/22 38/5 38/18
**actionable [1]** 18/4
**actions [7]** 3/17 7/16 20/25 22/5 22/24 30/12 38/12
**actors [1]** 45/1
**actually [13]** 5/22 16/14 16/19 19/14 23/2 25/13 25/15 27/15 33/22 33/22 41/11 58/5 61/9
**addition [1]** 30/17
**additional [5]** 14/7 14/10 21/4 28/4 30/16
**address [13]** 11/19 11/22 11/23 11/25 12/6 28/12 33/15 34/2 35/7 39/13 42/5 43/22 59/5
**addressed [2]** 38/24 43/8
**addresses [1]** 43/7
**adjourned [2]** 63/3 63/4
**adjudicated [2]** 41/11 41/21
**administration [2]** 7/21 30/9
**administration's [2]** 25/11 27/9
**Administrative [1]** 5/16
**Admiral [1]** 59/13
**admitted [1]** 11/22
**adventure [1]** 23/19
**adversely [1]** 8/18
**adverted [1]** 12/24
**affairs [1]** 47/25
**affected [1]** 8/18
**affects [1]** 6/8
**affirmatively [2]** 27/20 53/7
**again [30]** 5/20 6/9 11/4 11/16 12/7 15/23 20/9 20/10 21/18 28/1 28/16 28/20 28/23 29/3 29/12 31/9 32/7 37/6 53/23 55/2 56/17 56/18 56/19 56/21 57/13 57/17 58/6 58/15 59/24 62/22
**against [6]** 3/16 13/23 18/20 26/25 27/6 53/24
**age [1]** 54/7
**agencies [4]** 13/8 13/9 13/11 42/14
**agency [13]** 3/17 8/6 16/14 20/25 22/5 22/6 22/16 22/21 35/1 36/7 37/22 37/24 38/18
**agency's [2]** 7/15 57/18
**agent [1]** 24/9
**agents [1]** 45/20
**ago [1]** 13/7
**agree [2]** 12/22 50/5
**Ah [1]** 60/8
**aimed [1]** 6/16
**airport [1]** 33/7
**al [2]** 1/6 2/4
**Alabama [2]** 4/1 12/8
**alien [1]** 54/7
**ALIKHAN [1]** 1/9
**allow [1]** 2/18
**allowed [2]** 19/8 45/21

**A**

**almost [1]** 10/1
**alternate [1]** 52/3
**although [1]** 56/15
**always [1]** 34/11
**Amendment [12]** 23/22 23/23 24/4 24/14 24/15 26/4 26/10 43/15 43/22 43/24 50/15 51/19
**American [1]** 50/22
**amount [4]** 5/21 9/21 22/2 22/20
**analogy [1]** 29/8
**analysis [12]** 38/10 38/22 51/4 51/12 51/15 51/17 52/8 52/17 52/18 54/1 54/10 54/13
**analyzing [1]** 54/4
**animating [1]** 24/6
**animus [22]** 17/15 17/20 21/8 30/5 30/7 30/10 30/15 30/16 42/23 43/3 43/10 46/12 46/14 59/5 59/10 59/17 59/20 59/25 60/15 60/25 61/4 62/2
**anonymous [2]** 34/2 34/14
**anticipated [1]** 42/21
**anticipating [1]** 21/13
**anymore [1]** 61/21
**APA [15]** 6/14 17/24 21/24 21/24 21/25 22/1 22/4 23/7 23/16 28/11 36/7 42/7 42/8 42/9 56/13
**apart [3]** 37/22 52/11 52/13
**appeals [2]** 27/22 50/19
**appear [1]** 28/24
**appearance [3]** 2/5 58/14 58/16
**APPEARANCES [1]** 1/11
**appears [2]** 39/20 44/1
**applicability [1]** 31/13
**applicable [3]** 19/20 29/11 36/4
**applicant [1]** 41/19
**applicants [1]** 41/19
**application [9]** 6/8 7/2 7/6 8/24 9/1 9/13 25/16 41/11 57/2
**applications [1]** 41/21
**applied [1]** 41/8
**applies [4]** 8/5 32/15 42/13 54/12
**apply [6]** 4/11 17/16 20/19 24/15 28/25 57/8
**applying [3]** 7/17 8/20 56/20
**appointed [1]** 18/9
**appointment [1]** 31/2
**appointments [1]** 62/24
**appreciate [4]** 31/6 61/7 62/22 62/23
**approach [1]** 38/3
**arbitrary [6]** 38/4 38/8 38/17 38/25 39/1 42/14
**arguably [1]** 59/3
**argue [3]** 4/23 34/21 34/22
**argues [1]** 58/22
**arguing [2]** 5/19 58/7
**argument [16]** 4/18 4/24 22/2 22/9 24/1 29/4 29/5 31/5 40/16 53/10 53/13 55/22 57/21 58/13 58/24 62/22
**argument's [1]** 60/15
**argumentation [1]** 62/14
**arguments [8]** 2/23 4/21 5/16 5/18 6/15 6/15 23/17 45/18
**arisen [1]** 17/4
**around [4]** 4/18 18/22 29/2 59/19
**articulated [2]** 35/18 35/19
**aside [2]** 29/10 41/3
**aspect [2]** 39/13 47/16
**aspects [1]** 39/18
**asserting [1]** 52/21
**assertion [2]** 32/1 55/23
**asserts [2]** 50/4 52/20
**assess [1]** 49/21
**assigned [2]** 25/4 51/22
**Assistant [1]** 2/13
**associated [2]** 33/23 34/13
**assume [2]** 15/2 25/2
**assumed [3]** 27/11 53/4 53/8
**assuming [1]** 12/22
**astounding [1]** 22/2
**attesting [1]** 39/8
**attests [1]** 39/19
**Attorney [1]** 2/14
**attributable [2]** 43/25 50/11
**atypical [1]** 6/12
**authority [1]** 22/23
**authorized [1]** 24/8
**available [1]** 57/18
**Avenue [3]** 1/16 1/18 1/24
**average [1]** 12/16
**avoid [1]** 34/12
**avoiding [1]** 34/16
**aware [5]** 20/25 27/14 32/10 45/15 61/12
**away [1]** 9/1
**awkward [3]** 12/2 34/12 34/16

**B**

**B [1]** 48/15
**back [8]** 6/5 13/22 18/23 19/16 20/9 23/8 30/20 35/2
**Barrett's [3]** 54/3 54/10 55/1
**based [3]** 19/14 30/5 42/10
**basis [9]** 10/12 33/4 33/5 39/19 43/2 43/21 46/11 48/3 51/19
**BEAVERS [2]** 1/17 2/9
**beginning [2]** 2/5 60/16
**behalf [1]** 2/8
**behind [5]** 15/23 24/6 42/23 43/3 43/10
**believes [2]** 8/15 16/12
**belongs [1]** 55/18
**beneficial [1]** 62/1
**benefit [5]** 10/10 10/11 10/14 58/18 63/1
**benefits [2]** 9/16 33/11
**best [1]** 26/13
**better [1]** 18/16
**big [3]** 4/19 14/12 45/23
**bigger [2]** 12/14 12/16
**billboard [1]** 46/3
**binary [1]** 40/18
**bind [1]** 38/22
**binder [1]** 60/5
**binding [4]** 27/14 42/8 42/12 54/2
**binds [2]** 28/9 38/24
**biological [9]** 3/4 5/21 36/2 42/24 44/25 46/1 49/17 59/1 59/3
**biologically [1]** 55/11
**biology [13]** 3/2 3/6 3/8 3/9 3/11 5/20

**B**

**biology... [7]** 6/12 6/19 17/22 20/17 20/22 20/24 21/11
**birth [38]** 6/6 8/7 8/9 14/3 15/3 15/16 15/17 15/21 15/25 16/1 16/25 18/12 29/8 29/9 29/14 29/17 29/18 29/21 29/25 30/1 32/13 42/25 46/2 46/16 46/18 46/23 47/6 47/6 47/7 47/23 48/5 48/7 48/8 48/20 51/22 51/22 52/11 55/10
**bit [4]** 39/14 41/22 42/7 44/4
**black [2]** 14/12 40/18
**blanch [1]** 22/4
**board [1]** 11/2
**body [3]** 3/13 10/22 26/18
**boil [1]** 21/5
**bono [2]** 31/2 62/24
**border [8]** 33/14 33/17 35/12 35/18 35/19 45/4 45/6 45/8
**borders [3]** 19/4 19/12 35/9
**born [2]** 29/12 55/11
**borne [1]** 24/7
**Boston [1]** 1/16
**both [16]** 2/18 6/14 8/13 15/9 20/8 20/18 22/10 26/23 29/12 39/11 40/12 42/13 47/13 48/17 54/13 57/2
**box [1]** 14/12
**Boyle [1]** 5/7
**Breach [3]** 50/25 51/1 51/18
**brief [2]** 28/4 50/3
**briefed [1]** 43/19
**briefing [9]** 15/1 21/4 28/5 31/4 60/21 61/11 61/24 62/22 63/1
**bringing [2]** 42/10 56/13
**brings [1]** 32/15
**broad [1]** 39/17
**building [1]** 50/21
**BURKE [2]** 1/12 2/10
**button [1]** 7/3

**C**

**C [4]** 1/24 2/1 64/1 64/1
**caffeinated [1]** 18/22
**calculus [1]** 11/5
**call [1]** 27/8
**can [31]** 7/5 7/7 8/16 9/25 10/8 12/2 15/20 21/25 22/17 26/3 29/9 31/17 33/8 33/10 38/1 40/4 40/11 41/23 43/25 44/5 45/10 47/10 47/17 48/16 49/3 51/3 53/22 54/14 55/17 60/6 61/19
**Canada [2]** 19/5 33/18
**capricious [5]** 38/4 38/8 38/17 38/25 39/1
**car's [1]** 45/21
**card [60]** 6/25 7/13 8/6 8/16 8/21 9/13 9/14 9/15 9/15 9/16 9/20 9/23 10/1 10/1 10/6 10/7 10/15 10/17 10/18 10/18 10/23 10/25 11/14 11/17 11/20 12/4 12/12 14/15 19/2 24/18 25/2 25/18 25/25 32/24 33/2 33/4 33/6 33/13 33/20 33/25 34/5 34/23 35/14 35/15 36/9 36/14 36/19 37/5 37/13 41/4 41/12 41/15 45/3 45/4 45/12 47/8 56/17 57/9 57/11 58/9
**cards [3]** 36/1 36/2 57/2
**care [1]** 21/14
**carry [3]** 9/23 15/6 25/18
**carrying [1]** 10/1
**carte [1]** 22/4
**case [36]** 2/25 4/2 5/11 5/23 11/13 18/8 18/9 18/20 20/22 22/7 22/8 23/23 27/2 27/24 29/15 31/3 32/15 32/20 34/11 34/25 37/20 39/13 41/9 43/9 44/3 44/7 48/10 51/6 52/18 53/19 53/25 54/1 54/4 59/24 62/23 62/25
**cases [16]** 5/9 22/12 22/21 23/3 24/21 26/19 26/22 26/23 26/23 27/1 27/4 27/10 44/2 50/18 50/18 62/10
**CASSANDRA [2]** 1/11 2/7
**categories [2]** 6/20 20/20
**category [2]** 6/14 55/5
**cause [1]** 17/1
**causes [1]** 56/20
**CBP [20]** 13/5 13/14 13/18 14/13 15/6 15/8 15/11 16/23 23/8 23/11 23/11 35/23 35/24 37/7 37/16 37/20 37/21 41/16 56/11 56/15
**CBP's [3]** 12/23 41/20 56/14
**certainly [15]** 5/25 8/10 11/1 21/16 28/13 30/19 35/12 37/14 48/9 52/1 52/14 57/12 57/17 58/13 61/5
**certificate [15]** 6/6 8/7 8/9 14/4 15/17 15/21 15/25 16/2 16/25 18/12 29/14 29/19 47/6 47/7 55/10
**certificates [2]** 51/22 52/11
**certify [1]** 64/4
**challenge [10]** 25/9 36/6 36/19 37/16 37/17 38/1 38/13 41/3 42/9 56/14
**challengeable [1]** 37/22
**challenged [2]** 3/7 38/5
**challenges [1]** 20/14
**challenging [5]** 20/13 23/2 28/24 37/13 38/12
**Chamber [1]** 22/10
**chance [2]** 29/13 61/17
**change [16]** 4/5 14/21 15/12 16/8 16/15 32/17 34/23 36/13 37/3 41/5 47/1 47/4 48/9 56/25 57/4 57/9
**changeable [1]** 48/6
**changed [5]** 14/19 14/23 20/16 29/19 48/13
**changes [1]** 42/16
**changing [1]** 14/14
**character [1]** 17/10
**characteristics [3]** 20/18 54/19 55/24
**characterized [4]** 44/10 44/21 52/22 54/24
**characterizes [1]** 54/17
**charge [1]** 25/17
**children's [1]** 25/21
**chip [1]** 35/15
**choice [1]** 11/8

**C**

**choose [3]** 6/17 23/19 25/3
**chose [1]** 15/8
**chromosomal [6]** 39/20 39/23 40/10 40/22 40/25 54/20
**chromosomally [1]** 55/12
**chromosomes [5]** 29/13 40/13 58/22 58/25 59/2
**circuit [17]** 17/13 22/7 22/8 26/20 26/23 27/4 27/11 27/20 28/2 28/2 44/3 51/6 51/17 52/22 52/22 52/25 53/17
**Circuit's [2]** 27/24 59/24
**circuits [2]** 28/3 53/6
**circular [1]** 58/23
**cited [1]** 39/22
**cites [1]** 40/3
**Citizen [1]** 22/11
**citizens [3]** 24/10 24/11 24/12
**city [3]** 11/25 12/1 34/13
**civil [3]** 1/3 1/21 2/4
**claim [23]** 5/15 5/16 17/24 17/25 17/25 19/17 26/4 26/10 26/12 28/15 28/22 29/22 30/5 38/25 39/6 43/15 43/16 43/22 43/24 50/15 50/16 50/17 50/22
**claims [16]** 4/20 4/21 5/2 5/13 20/10 20/10 20/11 21/18 27/13 28/11 33/6 38/23 39/16 43/13 43/15 43/18
**clarifying [1]** 60/22
**class [12]** 19/24 19/25 20/7 29/23 53/11 54/5 54/8 54/8 54/12 54/16 54/25 55/20
**classes [1]** 54/6
**classic [1]** 10/8
**classwide [1]** 19/17
**clear [7]** 7/16 7/21 9/14 44/22 54/21 57/17 58/5
**clearly [1]** 11/25
**clerk [1]** 61/5
**clicks [1]** 7/3
**Code [1]** 44/22
**coin [1]** 29/17
**collection [1]** 26/24
**COLUMBIA [1]** 1/1
**coming [1]** 33/13
**commend [1]** 15/24
**Commerce [1]** 22/10
**commit [2]** 37/7 56/15
**communicate [1]** 25/11
**communication [1]** 44/18
**compel [2]** 49/24 49/25
**compelled [10]** 9/2 10/20 10/21 23/24 24/1 24/3 44/2 50/5 50/8 56/22
**compelling [1]** 24/11
**complicated [2]** 22/15 31/3
**comply [1]** 13/9
**component [1]** 47/22
**concede [3]** 10/6 26/13 50/9
**conceded [2]** 18/6 22/18
**concededly [4]** 10/19 11/10 11/12 13/5
**conception [2]** 15/4 15/14
**concerned [1]** 14/11
**concerns [4]** 11/20 13/4 24/6 42/9
**concluded [1]** 54/8
**conclusion [3]** 42/8 42/22 43/10
**concomitant [1]** 10/23
**concurrence [3]** 54/3 55/2 55/2
**conditions [3]** 10/9 39/18 40/6
**conduct [2]** 24/15 24/16
**confess [2]** 10/24 12/24
**confidentiality [1]** 11/22
**confirmed [1]** 35/23
**conflicting [4]** 8/4 14/6 15/19 57/15
**conform [5]** 27/9 32/5 48/23 49/1 59/11
**conforms [1]** 7/10
**connected [2]** 33/1 34/3
**consequences [1]** 30/11
**consideration [2]** 40/25 59/1
**considers [1]** 59/1
**consistent [13]** 3/6 14/8 14/23 16/7 16/20 17/17 17/22 18/12 37/4 38/11 38/16 52/9 58/8
**constitute [2]** 54/5 54/11
**Constitution [1]** 1/24
**constitutional [9]** 9/3 22/12 23/17 27/12 27/16 43/13 43/15 50/24 53/13
**constitutional arguments [1]** 23/17
**contains [1]** 44/24
**contention [1]** 29/10
**contest [3]** 23/25 24/20 24/25
**context [6]** 12/11 17/4 19/24 19/25 25/7 49/17
**contradicted [1]** 32/3
**contrary [1]** 32/20
**convey [3]** 29/16 44/11 49/16
**conveyed [5]** 44/25 46/5 46/8 46/15 46/16
**conveying [3]** 25/23 25/23 45/6
**conveys [1]** 46/8
**core [3]** 5/14 21/17 29/4
**correctly [1]** 16/10
**counsel [5]** 2/4 2/8 18/9 62/4 63/2
**countermand [1]** 57/23
**country [1]** 49/22
**couple [1]** 31/11
**course [11]** 5/14 9/12 12/11 13/6 25/18 27/5 28/3 36/5 58/12 58/24 60/4
**court [47]** 1/1 1/23 1/23 3/14 4/14 4/25 5/8 8/23 12/8 26/20 26/22 27/10 27/20 27/22 28/8 28/21 30/4 30/14 31/5 38/3 38/15 38/24 38/24 39/7 43/2 44/7 44/10 44/22 46/13 50/18 50/19 50/20 51/25 52/17 52/23 53/8 53/14 54/6 59/21 60/19 61/10 62/2 62/7 62/17 62/19 62/24 64/3
**court's [8]** 5/3 5/6 19/24 29/8 41/20 43/10 51/17 61/3
**court's website [1]** 41/20
**courthouse [1]** 5/5
**courts [1]** 27/17
**cover [2]** 34/19 56/1
**create [1]**

**C**

**create... [1]** 23/6
**creating [1]** 21/13
**Cressman [1]** 44/3
**cross [3]** 35/12 35/18 45/8
**crossing [3]** 19/4 35/9 35/19
**crossings [1]** 45/5
**crux [1]** 43/23
**cumbersome [1]** 12/14
**current [13]** 6/23 7/11 8/16 14/3 18/4 46/19 47/7 47/11 47/15 47/20 47/24 48/17 48/20
**currently [5]** 7/20 18/1 32/5 43/19 57/22
**custom [1]** 23/12
**cuts [4]** 13/17 13/23 21/17 52/8
**cv [2]** 1/4 2/4

**D**

**D [2]** 1/21 2/1
**D.C [13]** 17/13 22/7 22/8 26/20 26/23 27/4 27/11 27/19 52/22 52/22 52/24 53/17 59/24
**daily [2]** 12/20 25/20
**date [2]** 52/1 64/9
**day [4]** 9/17 9/17 10/4 10/4
**DC [4]** 1/5 1/14 1/22 1/25
**DDC [1]** 22/20
**dead [1]** 59/14
**deal [1]** 12/16
**dealing [3]** 4/21 20/7 44/2
**debate [1]** 24/23
**decades [1]** 16/8
**decide [2]** 53/15 53/16
**deciding [3]** 27/11 53/4 53/9
**decision [3]** 51/18 56/14 61/4
**declaration [3]** 33/23 34/4 43/6
**declined [1]** 9/14
**deep [1]** 51/7
**deeper [1]** 41/25
**deeply [4]** 3/12 26/17 51/4 51/14
**defendants [3]** 1/7 1/20 2/14
**definable [1]** 54/17
**defined [1]** 36/3
**defining [1]** 15/3
**definitely [1]** 22/25
**definition [2]** 41/7 54/9
**definitionally [1]** 24/10
**definitions [1]** 37/1
**definitively [1]** 41/6
**degree [2]** 40/3 54/22
**demonstrate [1]** 51/4
**demonstrated [2]** 53/18 53/19
**demonstration [1]** 52/15
**department [13]** 1/20 8/3 14/5 15/5 15/12 16/4 16/23 22/19 23/7 29/20 57/3 57/10 57/14
**department's [8]** 4/4 7/22 13/2 13/12 13/20 15/11 15/18 38/6
**departure [1]** 26/19
**depend [2]** 25/6 29/23
**designated [1]** 55/13
**designation [20]** 7/20 9/6 9/23 10/18 12/19 14/8 16/11 17/7 18/13 25/15 25/19 26/1 34/22 37/5 41/5 52/16 57/25 58/2 58/9 58/11
**designations [1]** 57/1
**desire [1]** 15/23
**despite [1]** 21/1
**destroyed [1]** 27/3
**determine [1]** 49/20
**determining [1]** 47/23
**DHS [1]** 13/9
**dichotomy [1]** 35/6
**dictate [3]** 39/23 58/23 58/25
**die [2]** 44/9 49/9
**difference [5]** 5/23 6/10 16/18 19/6 28/23
**differences [4]** 16/16 20/9 29/4 45/23
**different [17]** 4/21 5/3 5/13 6/1 6/14 10/15 20/6 25/14 29/7 32/11 40/5 40/5 48/10 54/19 54/19 54/23 62/18
**differential [1]** 39/9
**difficult [1]** 17/23
**digging [1]** 60/4
**direct [1]** 36/5
**directed [2]** 13/8 14/21
**directing [1]** 22/6
**directly [5]** 19/20 23/2 32/2 36/19 38/1
**discovery [1]** 61/11
**discrete [2]** 54/15 54/16
**discreteness [1]** 54/24
**discretion [3]** 5/9 22/20 22/22
**discretionary [1]** 22/24
**discriminate [1]** 53/24
**discriminatory [1]** 15/10
**discuss [2]** 2/16 61/19
**discussed [2]** 26/20 42/7
**discussion [1]** 19/24
**disguised [1]** 38/13
**display [2]** 29/9 36/2
**dispute [12]** 3/3 5/23 6/11 20/14 20/15 20/22 20/24 21/10 23/22 40/15 42/22 43/23
**disputed [1]** 9/24
**disputing [2]** 21/11 50/4
**dissemination [4]** 26/24 26/25 27/7 27/7
**distinct [4]** 9/6 20/4 55/21 55/24
**distinction [2]** 39/15 43/4
**distinguish [1]** 39/14
**district [7]** 1/1 1/1 1/10 4/1 12/8 50/18 61/10
**dive [2]** 2/19 51/7
**Division [1]** 1/21
**DNA [1]** 3/3
**docket [1]** 5/6
**doctrine [4]** 23/24 23/24 24/7 24/13
**document [5]** 3/15 7/25 7/25 44/24 52/15
**documentation [14]** 6/3 8/15 15/24 16/7 16/15 16/19 16/20 18/1 18/7 18/11 46/7 46/20 47/25 57/22
**documentations [1]** 47/17
**documented [1]** 46/19
**documents [6]** 39/22 44/14 44/14 51/9 52/14 58/13
**Doe [2]** 4/2 12/8
**DONALD [2]** 1/6 2/3
**done [4]** 13/11 13/21 18/15 37/24
**doubts [2]** 50/23 50/25
**down [5]** 8/24 8/25 19/14 25/15 33/21
**Dr. [3]** 30/16

**D**

**Dr.... [2]** 59/6 59/18
**Dr. Kaufman's [3]** 30/16 59/6 59/18
**drafters [1]** 59/8
**drastic [1]** 26/19
**draw [1]** 43/4
**drill [1]** 33/21
**drive [2]** 19/5 45/21
**driven [2]** 17/20 21/8
**driver's [19]** 9/18 11/3 11/16 11/17 11/18 11/23 12/3 12/10 12/10 12/13 18/25 33/16 33/25 34/1 34/5 34/10 34/14 35/5 35/6
**due [2]** 43/16 56/19
**during [1]** 45/5
**dying [1]** 49/14

**E**

**E [5]** 2/1 2/1 35/16 64/1 64/1
**E-ZPass [1]** 35/16
**earlier [2]** 12/24 28/8
**easy [3]** 5/12 18/8 18/10
**ECF [1]** 60/2
**educated [1]** 40/10
**effect [4]** 5/5 5/11 6/1 14/14
**effectively [5]** 18/19 22/4 25/16 29/13 29/17
**Eighth [1]** 1/18
**either [9]** 6/20 9/2 10/16 10/17 13/23 27/14 41/11 56/15 56/21
**electronic [1]** 35/15
**electronically [1]** 35/16
**element [1]** 44/3
**else [7]** 17/7 28/12 30/23 42/4 48/1 55/25 61/18
**employed [1]** 46/6
**Employees [1]** 50/23
**encompasses [1]** 39/18
**endorse [1]** 44/6
**endorsed [3]** 44/1 45/10 50/12
**endorsement [1]** 45/1
**enforce [1]** 32/13
**enforcement [2]** 3/16 56/14
**enjoining [1]** 3/15
**enough [1]** 16/3
**ensure [1]** 14/8
**entered [1]** 10/2
**entire [1]** 21/18
**entirely [1]** 6/13
**entitled [3]** 10/11 49/19 64/5
**entry [60]** 6/22 6/23 7/10 7/13 7/18 7/18 7/25 8/6 8/11 8/16 8/21 9/9 9/16 10/25 11/14 11/16 12/12 12/23 13/4 14/15 16/24 18/23 19/2 19/7 19/7 24/18 25/2 32/24 33/2 33/4 33/6 33/13 33/20 33/25 34/5 34/8 34/10 34/19 34/23 35/6 35/9 35/13 35/15 35/21 35/21 36/1 36/9 36/21 36/22 37/5 41/4 41/12 41/15 45/3 45/4 45/12 56/16 56/20 57/9 58/9
**EO [9]** 15/4 23/2 23/3 23/5 36/10 36/21 36/23 37/1 37/20
**equal [13]** 5/15 6/15 28/15 28/18 28/19 28/22 29/4 29/5 29/21 39/6 51/11 53/20 53/22
**equally [5]** 15/9 15/9 15/10 28/25 42/13
**equitable [1]** 5/8
**erase [1]** 3/8
**especially [1]** 62/24
**essentially [4]** 9/2 9/17 12/12 45/6
**et [2]** 1/6 2/3
**evade [1]** 22/4
**even [19]** 4/7 10/10 10/19 10/25 12/16 13/13 14/3 15/25 18/9 20/22 22/14 22/22 25/7 47/13 51/16 54/20 56/12 56/20 57/21
**everybody [1]** 40/17
**everyone [2]** 40/3 54/21
**evidence [12]** 3/4 3/5 5/21 9/21 30/15 30/16 40/21 56/25 59/12 59/14 59/17 62/2
**exact [3]** 18/19 22/9 30/3
**exactly [10]** 6/14 16/5 19/23 36/16 38/19 41/24 57/24 58/20 59/23 60/22
**example [9]** 8/3 14/5 17/11 24/21 25/21 27/24 27/24 55/9 59/15
**excellent [1]** 31/4
**exception [2]** 15/15 24/13
**excluded [1]** 4/15
**executive [55]** 3/17 6/2 7/15 8/1 13/2 13/6 13/8 13/9 14/17 14/21 17/10 17/12 17/12 17/15 20/12 20/24 21/1 21/13 22/5 22/16 22/17 22/22 22/23 30/8 32/6 32/20 34/20 35/22 35/25 35/25 36/3 36/4 36/5 37/17 37/17 37/25 38/2 38/5 38/7 38/8 38/10 38/14 41/7 41/8 41/14 42/23 42/23 43/1 43/3 43/11 46/23 48/4 48/25 59/9 60/1
**exemption [3]** 18/14 18/19 18/19
**exercise [1]** 5/8
**exercised [1]** 22/19
**exercises [1]** 22/21
**exist [1]** 52/9
**existence [6]** 21/2 21/19 36/9 50/23 52/10 53/12
**existing [1]** 55/20
**exists [2]** 27/21 27/23
**expansion [1]** 22/2
**expedited [2]** 19/8 35/9
**experience [2]** 3/10 3/21
**experienced [1]** 40/23
**experiencing [1]** 4/17
**expert [8]** 30/17 39/19 39/21 39/22 40/3 43/8 54/17 59/6
**expert's [1]** 40/17
**expire [3]** 3/19 4/16 7/12
**expires [1]** 3/23
**expiring [1]** 13/23
**explained [1]** 3/6
**explains [1]** 46/23
**explanation [1]** 48/18
**explicit [1]** 15/13
**explicitly [3]** 8/9 13/8 14/21
**expressed [1]** 33/19

**E**

**expressing [1]** 24/9
**expression [2]** 45/10 49/12
**extent [7]** 21/25 37/12 38/22 42/8 55/17 56/11 58/6
**extra [1]** 41/22
**extremely [1]** 39/17
**exude [1]** 59/10

**F**

**F [1]** 64/1
**faced [1]** 28/20
**fact [25]** 13/14 23/8 24/1 24/8 29/9 29/21 32/9 32/10 37/24 39/4 39/8 40/2 40/2 40/25 42/17 44/25 46/1 46/24 46/24 47/1 48/5 48/12 48/14 49/10 49/17
**facts [2]** 31/22 41/8
**factual [1]** 62/15
**factually [1]** 5/25
**fairly [1]** 52/17
**faithful [1]** 62/16
**fall [1]** 55/5
**falls [1]** 55/20
**false [1]** 11/23
**far [3]** 12/1 33/17 46/6
**fast [1]** 62/15
**federal [7]** 16/6 44/22 49/2 49/3 57/1 58/8 58/12
**Federation [1]** 50/22
**fee [1]** 7/5
**female [28]** 6/13 6/20 7/12 7/20 7/23 8/25 11/4 12/19 14/4 15/22 16/21 18/1 18/13 20/19 29/13 31/16 37/5 39/24 39/25 40/8 40/18 40/20 40/24 42/20 55/15 55/19 57/4 58/11
**few [6]** 2/18 28/19 56/10 59/5 61/17 61/24
**fictitious [1]** 34/13
**Fifth [3]** 26/4 50/15 51/19
**fighting [1]** 18/20
**file [2]** 61/16 61/17
**final [2]** 22/12 22/13
**finally [2]** 59/4 59/14
**find [7]** 21/6 43/3 51/2 51/19 53/18 57/10 58/17
**finding [2]** 4/16 61/4
**fine [5]** 9/25 10/8 18/7 24/2 30/19
**finished [1]** 28/11
**firm [2]** 31/4 62/23
**firmly [2]** 38/24 53/14
**first [24]** 4/19 8/20 10/2 15/17 21/24 23/21 23/23 24/4 24/14 24/15 24/19 25/14 26/9 26/22 28/2 28/18 30/14 31/20 43/15 43/22 43/22 43/23 54/14 56/11
**fit [2]** 6/19 20/19
**flies [1]** 9/19
**flip [1]** 53/2
**flipping [1]** 18/23
**focus [1]** 31/11
**focused [2]** 20/11 31/12
**follow [2]** 13/19 13/21
**followed [1]** 14/18
**footnote [2]** 28/4 28/6
**force [4]** 3/10 3/12 16/15 25/10
**forced [3]** 6/5 25/15 25/16
**forcing [2]** 29/16 58/8
**foregoing [1]** 64/4
**foreign [2]** 44/19 46/10
**forfeiting [1]** 9/3
**form [3]** 9/9 11/8 19/19
**formal [2]** 56/12 56/12
**formalized [1]** 23/13
**former [2]** 47/13 48/17
**forms [6]** 8/25 9/1 11/9 33/21 49/1 52/12
**forth [1]** 3/4
**forward [2]** 2/4 5/20
**found [5]** 27/22 27/25 51/8 52/17 54/6
**Franklin [5]** 22/11 23/1 23/6 36/6 37/22
**frankly [2]** 16/1 17/1
**free [3]** 44/9 49/9 49/14
**frequently [1]** 9/20
**friend [2]** 36/12 53/3
**front [1]** 21/22
**fully [1]** 49/1
**fundamental [5]** 26/15 52/24 52/25 53/12 53/15
**fundamentally [3]** 4/20 5/13 5/17
**further [1]** 56/3
**furthered [2]** 58/6 58/14

**G**

**G [1]** 2/1
**Gale [1]** 40/2
**gender [33]** 3/1 3/2 5/17 6/3 6/4 6/5 6/10 6/16 7/10 7/10 9/6 10/15 11/3 11/10 14/15 16/17 18/1 20/11 20/13 24/23 25/12 29/6 46/22 46/25 48/5 48/10 48/18 48/20 48/23 49/5 55/6 56/16 57/4
**general [2]** 24/22 32/12
**generally [3]** 20/15 41/1 52/14
**genetics [1]** 40/10
**gets [3]** 13/22 20/12 23/6
**given [10]** 15/20 17/22 20/23 20/24 21/9 21/10 30/7 30/8 41/3 61/16
**giving [1]** 25/19
**global [60]** 6/22 6/23 7/9 7/13 7/18 7/18 7/25 8/5 8/11 8/16 8/21 9/9 9/16 10/25 11/14 11/16 12/12 12/23 13/4 14/15 16/24 18/23 19/2 19/7 19/7 24/18 25/2 32/24 33/2 33/4 33/6 33/13 33/20 33/25 34/5 34/8 34/9 34/19 34/23 35/6 35/9 35/13 35/15 35/21 35/21 36/1 36/9 36/21 36/22 37/5 41/4 41/12 41/15 45/3 45/4 45/12 56/16 56/20 57/8 58/9
**Glucksberg [4]** 51/3 51/15 51/17 52/8
**goes [5]** 7/3 7/5 20/9 28/3 57/8
**good [10]** 2/2 2/7 2/11 2/13 2/15 2/15 16/3 29/7 31/9 31/10
**Goodwin [3]** 1/13 1/15 1/18
**Gore [3]** 51/6 51/25 52/17
**government [85]**
**government's [13]** 17/8 20/20 22/1 22/9 24/12 44/11 44/15 48/21 56/17 57/25 58/1 58/24 59/11

G
**government-issued [3]** 46/7 49/18 52/13
**governments [2]** 44/19 46/10
**grant [1]** 3/14
**grateful [1]** 31/3
**grave [1]** 50/23
**great [3]** 27/24 30/22 33/23
**group [4]** 54/15 54/16 54/23 55/17
**guess [11]** 6/25 8/13 13/17 14/16 16/13 21/24 34/20 34/22 42/7 52/7 60/18
**guidance [9]** 7/22 13/1 13/20 14/5 15/5 15/6 21/14 34/25 57/15
**gymnastics [1]** 27/17

H
**half [1]** 13/7
**Hampshire [1]** 44/9
**hang [1]** 31/25
**happen [1]** 41/7
**happened [3]** 29/14 36/18 41/13
**happening [1]** 14/12
**happy [9]** 21/4 23/18 28/4 28/14 28/15 42/4 56/9 60/12 60/21
**hard [3]** 2/25 20/20 25/7
**hardest [1]** 58/17
**harm [29]** 3/22 8/13 8/19 8/21 9/10 9/22 9/24 10/6 10/7 10/19 11/5 13/24 17/2 19/25 20/5 20/6 20/21 31/13 31/14 31/15 31/18 31/25 33/1 33/5 33/23 34/3 34/15 56/18 56/20
**harmful [1]** 11/11
**harms [2]** 10/22 20/2
**head [1]** 21/3
**heading [1]** 62/3
**hear [2]** 21/23 55/3
**hearing [2]** 1/9 2/20
**heart [1]** 20/12
**heightened [1]** 53/10
**helpful [5]** 17/3 21/15 24/5 59/24 60/13
**highly [1]** 50/21
**historical [7]** 29/9 29/21 39/8 48/12 48/14 49/10 51/21
**history [2]** 51/5 51/7
**hit [1]** 19/23
**hits [1]** 25/13
**holder [1]** 47/18
**holder's [2]** 46/16 46/18
**holding [1]** 44/20
**holds [1]** 27/15
**holiday [1]** 62/3
**Honor [24]** 2/2 2/7 2/13 2/24 3/20 16/6 19/23 23/18 30/24 31/7 31/9 31/12 33/8 42/5 42/22 56/2 56/10 57/12 58/20 60/7 61/8 61/21 62/8 62/12
**Honor's [1]** 35/20
**HONORABLE [1]** 1/9
**HOOK [3]** 1/23 64/3 64/9
**hoping [1]** 2/19
**hour [1]** 2/20
**hurts [1]** 16/19
**hypothetical [3]** 37/8 47/3 48/13

I
**idea [1]** 27/9
**identical [1]** 12/12
**identification [29]** 9/19 11/2 11/6 11/9 11/9 12/20 33/21 35/3 40/2 43/2 44/14 46/22 46/22 46/25 47/20 48/22 48/24 49/2 49/3 49/18 51/9 52/12 52/13 52/14 57/2 58/4 58/5 58/13 58/15
**identified [1]** 48/16
**identifier [1]** 47/2
**identifies [2]** 17/7 54/12
**identify [4]** 6/4 47/10 47/12 47/18
**identifying [4]** 47/14 47/15 47/16 48/1
**identity [19]** 3/1 3/2 5/17 6/10 6/16 16/17 20/11 20/13 24/17 25/12 29/6 39/20 42/18 42/19 45/7 48/5 48/20 49/21 55/7
**ideo [1]** 44/12
**ideological [6]** 45/8 45/25 46/1 47/22 49/8 49/17
**ideologically [1]** 46/12
**ignore [1]** 3/9
**ignores [1]** 3/7
**ignoring [1]** 21/19
**III [1]** 1/20
**illustration [1]** 29/7
**imagine [2]** 20/20 25/8
**immediately [1]** 13/11
**imminency [2]** 8/12 13/24
**imminent [5]** 19/13 31/15 32/8 33/1 56/18
**immunity [1]** 24/13
**immutable [8]** 20/15 43/2 46/24 47/1 48/5 48/8 48/19 48/20
**implement [7]** 22/6 37/25 38/8 38/9 39/1 42/15 42/16
**implementation [5]** 13/3 15/11 16/13 38/6 38/12
**implemented [3]** 6/2 39/3 49/1
**implementing [9]** 3/17 7/15 13/10 22/16 22/22 23/5 36/25 38/16 57/15
**implicate [2]** 20/2 30/3
**implicated [1]** 29/24
**implicates [1]** 24/22
**important [2]** 15/7 24/24
**inclined [1]** 51/2
**include [2]** 41/23 41/24
**included [3]** 59/5 59/6 59/17
**includes [3]** 39/10 53/25 59/7
**including [5]** 3/16 7/21 13/9 14/23 36/14
**inconsistent [3]** 17/8 58/10 58/12
**incorrect [2]** 7/24 8/15
**independently [1]** 51/16
**indicate [3]** 31/23 39/23 41/9
**indicated [11]** 5/7 8/2 8/22 14/24 14/24 16/9 27/20 56/15 57/14 58/3 58/21
**indicates [5]** 40/3 40/17 40/22 41/20 57/6
**indicating [1]** 59/25
**indication [7]** 8/8 14/19 14/20 15/22 31/21 33/14 34/10
**indicator [1]** 42/25
**indisputable [2]** 3/6 6/19
**indisputed [1]** 20/17
**individual [10]** 4/16 7/17 20/1 20/4 20/7

**I**

**individual... [5]** 44/8 44/20 46/9 49/12 50/2
**individual's [2]** 45/7 49/16
**individuals [13]** 19/21 19/22 21/9 39/10 39/11 39/18 44/10 54/5 54/11 54/18 54/20 55/4 55/5
**indulge [1]** 60/14
**infancy [1]** 10/3
**inform [1]** 38/22
**information [24]** 3/13 7/4 7/4 8/4 9/9 10/21 14/7 15/20 25/24 26/17 27/2 27/25 29/16 36/14 37/3 41/16 45/5 46/8 47/17 49/20 50/21 57/16 59/7 59/21
**informational [10]** 26/15 26/21 27/12 27/16 27/21 27/23 28/1 51/20 52/24 53/1
**informs [1]** 5/8
**inherent [1]** 59/3
**initially [2]** 11/18 57/3
**injunction [12]** 1/9 2/17 3/1 3/15 4/14 26/9 32/21 34/15 43/17 43/21 50/10 54/2
**injury [7]** 4/17 17/24 19/19 21/21 25/8 25/13 42/2
**inoperable [1]** 15/13
**inquiry [1]** 41/25
**insisting [1]** 58/19
**instead [5]** 3/7 9/24 11/17 15/16 52/20
**instructions [4]** 36/15 36/24 39/2 42/15
**intend [1]** 61/11
**intended [1]** 44/25
**intentional [1]** 15/3
**interest [5]** 15/22 29/16 46/17 48/21 58/14
**interesting [1]** 21/7
**internal [2]** 46/25 48/6
**intersex [35]** 3/8 5/19 6/7 6/10 6/11 6/18 16/17 17/6 17/22 19/21 20/17 21/2 21/11 21/19 25/24 28/23 28/25 30/2 30/9 39/5 39/11 39/13 39/16 39/19 40/12 42/10 42/18 42/18 54/13 54/17 55/4 55/4 55/16 55/18 55/23
**interview [1]** 41/24
**intimate [3]** 3/12 10/21 26/17
**intuitively [1]** 22/6
**investigating [1]** 57/18
**investigation [5]** 14/7 14/10 41/23 41/23 57/16
**invite [1]** 12/2
**irrational [1]** 15/9
**irreparability [1]** 13/24
**irreparable [14]** 3/22 4/17 11/5 17/24 18/24 19/19 21/21 31/13 31/14 31/15 31/18 31/25 33/5 42/2
**issue [11]** 5/22 13/10 26/6 26/8 26/14 31/13 32/11 32/19 43/17 43/18 45/24
**issued [11]** 7/22 13/7 13/14 13/15 35/22 35/24 44/15 46/7 49/3 49/18 52/13
**issuing [1]** 22/5

**J**

**J [2]** 1/6 2/3
**JAIME [2]** 1/12 2/9
**JANA [2]** 1/3 2/3
**JANSEN [22]** 1/3 2/3 3/9 3/16 3/24 8/23 9/22 10/10 12/17 13/16 14/11 15/24 16/10 17/17 18/9 18/16 25/11 29/12 29/16 45/9 50/3 50/5
**Jansen's [11]** 2/16 3/3 7/19 14/2 17/22 20/17 45/10 46/5 56/25 58/15 62/4
**JEFF [3]** 1/23 64/3 64/9
**JOHNNY [2]** 1/20 2/14
**Joining [1]** 2/8
**JUDGE [1]** 1/10
**judgment [3]** 43/19 61/1 61/10
**July [3]** 1/5 62/7 62/10
**July 10th [1]** 62/7
**July 17th [1]** 62/10
**jumping [1]** 34/17
**jurisdiction [1]** 50/20
**jurisdictions [1]** 50/19
**Justice [3]** 1/20 54/3 54/10
**justification [1]** 58/4

**K**

**Kaufman [3]** 43/6 43/6 60/3
**Kaufman's [3]** 30/16 59/6 59/18
**keep [1]** 2/19
**key [4]** 5/23 7/14 18/5 18/5
**kids [1]** 25/22
**kind [14]** 4/6 10/22 14/6 21/17 21/22 26/17 27/17 27/25 28/25 29/21 30/11 34/14 53/7 57/20
**kiosk [1]** 33/11
**knowing [1]** 46/18
**known [1]** 18/17
**KYLIE [2]** 1/12 2/10

**L**

**L [1]** 1/9
**lack [2]** 17/9 46/12
**land [10]** 19/4 19/12 33/14 33/17 35/9 35/12 35/18 35/19 45/5 45/8
**lanes [2]** 35/9 35/17
**large [4]** 44/12 45/9 46/5 54/18
**last [4]** 11/21 47/11 51/13 58/20
**lawsuit [2]** 32/10 57/13
**layers [2]** 8/19 9/10
**least [6]** 5/7 8/22 15/21 22/19 22/19 57/14
**Lee [1]** 51/6
**less [1]** 13/13
**letterhead [1]** 37/21
**level [2]** 25/14 27/22
**levels [1]** 25/14
**Levine [1]** 59/13
**Levine's [1]** 59/12
**LGBT [1]** 59/16
**license [23]** 9/18 11/3 11/16 11/17 11/19 11/24 12/3 12/10 12/10 12/13 18/25 33/16 33/25 34/1 34/5 34/10 34/14 35/5 35/7 44/8 44/9 45/19 45/24
**life [3]** 9/17 10/4 25/20
**likely [2]** 3/21 28/21
**limited [2]**

**L**

**limited... [2]** 22/11 22/19
**list [1]** 28/3
**listed [1]** 15/17
**literal [1]** 3/3
**literature [1]** 54/21
**litigation [3]** 50/25 51/2 51/18
**little [1]** 41/22
**live [2]** 44/9 49/8
**lived [1]** 3/9
**lives [3]** 12/1 12/1 33/16
**living [1]** 49/14
**LLP [3]** 1/13 1/15 1/18
**LOBEL [2]** 1/15 2/9
**log [1]** 36/13
**long [3]** 12/25 22/20 51/21
**longer [2]** 4/7 41/25
**look [11]** 5/14 7/1 14/2 14/3 18/11 21/4 21/16 37/15 38/5 40/17 59/24
**looked [1]** 38/6
**looking [4]** 16/20 25/25 45/25 62/13
**looks [2]** 12/12 51/25
**LOREN [1]** 1/9
**lose [4]** 4/3 4/8 12/15 31/23
**loses [1]** 12/17
**losing [1]** 12/19
**loss [1]** 4/3
**lost [3]** 30/17 31/21 31/22
**lot [8]** 5/4 6/23 17/1 17/1 23/3 39/18 40/16 62/10
**LOUIS [2]** 1/15 2/9
**love [1]** 23/21
**lower [1]** 5/8

**M**

**M [2]** 64/3 64/9
**MA [1]** 1/16
**magnitude [2]** 20/6 20/8
**Mailman's [1]** 59/8
**main [1]** 26/21
**major [1]** 14/11
**makes [5]** 17/23 20/4 32/11 44/22 54/21
**making [2]** 5/19 20/13
**male [25]** 6/13 6/20 8/24 9/3 9/4 9/23 10/17 10/20 10/23 16/10 20/18 25/19 25/23 25/25 29/12 29/14 40/18 41/9 55/13 55/18 56/18 56/22 57/4 58/1 58/9
**manifest [1]** 40/4
**manifests [1]** 54/22
**many [6]** 17/12 17/12 54/19 54/19 54/22 54/22
**map [1]** 49/4
**marker [35]** 6/17 7/10 7/10 8/17 10/15 11/4 11/10 14/15 24/17 31/16 32/5 32/20 33/2 37/14 39/24 39/25 40/8 40/19 40/20 40/21 40/24 41/10 42/20 42/25 46/15 46/16 47/5 48/23 52/2 52/3 52/6 56/16 56/17 58/23 58/25
**markers [4]** 49/5 51/8 57/4 58/7
**married [1]** 47/4
**Marshall [2]** 4/2 12/9
**materials [1]** 43/7
**matter [5]** 15/8 29/13 51/21 63/2 64/5
**may [4]** 10/6 25/1 33/9 59/7
**maybe [7]** 10/24 12/25 13/12 16/19 21/9 21/12 32/11
**mean [26]** 13/11 14/16 15/16 16/12 17/10 17/17 18/7 20/3 20/3 20/4 21/5 23/1 28/6 34/7 34/21 37/12 37/25 40/16 41/2 42/6 42/13 48/12 48/18 48/18 49/19 55/17
**means [5]** 6/19 11/23 13/20 14/9 57/17
**medical [1]** 39/22
**meets [1]** 54/8
**member [1]** 33/9
**memorandum [2]** 32/4 32/14
**mention [1]** 51/13
**mentioned [1]** 7/25
**mere [2]** 13/14 37/24
**merely [1]** 39/7
**merits [5]** 21/20 27/13 29/10 42/3 53/4
**message [6]** 25/11 44/6 44/12 45/25 46/1 49/15
**metric [1]** 46/22
**Mexico [1]** 33/18
**Middle [2]** 4/1 12/8
**might [7]** 30/6 32/16 55/6 56/10 57/22 61/9 61/12
**military [3]** 17/11 17/14 60/1
**mind [1]** 21/22
**mindful [3]** 2/21 62/3 62/17
**mine [1]** 12/25
**minutes [2]** 2/20 28/19
**mismatch [1]** 26/1
**moment [5]** 17/4 24/5 31/1 39/12 60/6
**month [1]** 17/14
**months [2]** 4/6 7/6
**Monument [1]** 59/16
**morally [1]** 17/9
**more [25]** 6/21 15/20 17/23 18/24 20/12 22/15 23/15 26/15 28/14 30/1 43/1 46/21 47/1 47/1 47/5 47/14 47/21 47/24 48/19 48/20 49/17 51/14 53/14 60/9 61/2
**morning [8]** 2/2 2/7 2/11 2/13 2/15 31/9 31/10 60/10
**mosaicism [9]** 39/21 39/23 40/4 40/4 40/7 40/23 40/25 54/21 54/22
**most [6]** 3/12 15/7 24/23 59/2 59/3 60/22
**motion [4]** 2/16 3/1 3/14 50/10
**motivated [1]** 46/12
**motivating [1]** 30/7
**motto [3]** 49/9 49/10 49/12
**mouth [1]** 3/11
**move [2]** 23/18 42/4
**moving [2]** 32/24 62/15
**Mr. [3]** 31/8 61/13 62/9
**Mr. Walker [3]** 31/8 61/13 62/9
**Ms. [29]** 2/23 3/3 3/9 3/16 3/24 7/19 8/23 9/22 10/10 12/17 13/16 14/2 14/11 15/24 16/10 17/17 17/22 18/9 18/16 20/17 25/11 29/12 29/16 50/3 50/5 56/7 56/25 58/15 62/4
**Ms. Jansen [19]** 3/9 3/16 3/24 8/23 9/22 10/10 12/17 13/16 14/11 15/24 16/10 17/17 18/9 18/16 25/11 29/12 29/16 50/3 50/5

**M**

**Ms. Jansen's [8]** 3/3 7/19 14/2 17/22 20/17 56/25 58/15 62/4
**Ms. Snyder [2]** 2/23 56/7
**much [9]** 12/16 31/6 31/7 49/17 51/14 55/23 56/5 62/21 62/22
**must [2]** 14/13 23/13
**myself [1]** 28/9
**mysterious [1]** 15/5

**N**

**N [2]** 1/13 2/1
**name [22]** 18/17 29/19 29/20 47/5 47/7 47/9 47/11 47/11 47/13 47/15 47/21 48/7 48/8 48/9 48/13 48/14 48/15 48/17 48/17 57/13 59/13 59/14
**namely [1]** 31/12
**names [3]** 29/25 30/1 47/4
**nation's [2]** 51/5 51/7
**nature [3]** 38/4 47/8 54/15
**nearly [1]** 27/21
**necessarily [4]** 24/10 25/22 41/18 55/19
**necessity [1]** 40/7
**need [11]** 12/25 13/20 18/24 19/2 22/14 33/12 35/13 36/15 51/14 54/16 62/1
**needs [1]** 53/18
**neither [2]** 24/11 27/19
**new [10]** 1/19 4/10 7/24 32/18 32/19 44/9 52/21 53/1 54/5 59/20
**next [1]** 58/11
**Ninth [1]** 28/2
**no sort [1]** 34/6
**non [2]** 25/20 55/12
**non-government [1]** 25/20
**none [2]** 37/8 60/19
**nonexistent [1]** 15/6
**nonoverlapping [1]** 43/14
**normal [1]** 8/11
**Northern [1]** 1/16
**notably [1]** 14/1
**note [2]** 2/5 4/20
**noted [2]** 4/1 52/23
**notes [4]** 28/18 60/11 60/15 61/6
**noting [3]** 56/19 58/2 61/9
**November [4]** 6/25 32/25 36/17 56/19
**now address [1]** 35/7
**number [8]** 25/2 25/3 25/3 25/4 27/3 40/4 40/5 60/3
**NW [3]** 1/13 1/21 1/24
**NY [1]** 1/19

**O**

**O [1]** 2/1
**object [1]** 50/7
**objected [4]** 49/14 50/8 50/10 50/11
**objection [1]** 53/5
**objects [2]** 33/3 50/5
**obtain [1]** 9/16
**obtaining [1]** 13/16
**obviously [10]** 11/19 12/13 12/18 19/17 21/21 31/24 36/1 38/7 49/2 62/15
**occurred [2]** 37/9 60/10
**ocean [1]** 21/6
**Off [1]** 21/3
**offhand [1]** 60/2
**officers [1]** 45/7
**official [3]** 1/23 11/23 64/3
**officials [6]** 25/20 25/21 44/17 45/4 46/9 49/19
**often [5]** 11/17 12/4 34/4 34/7 34/9
**oftentimes [1]** 9/18
**old [1]** 16/2
**Olentangy [1]** 24/21
**once [1]** 48/25
**one [12]** 7/14 14/10 15/8 17/21 18/14 32/24 35/2 40/11 45/14 45/24 59/8 60/9
**one's [2]** 26/18 58/23
**one-time [1]** 18/14
**online [4]** 6/24 7/3 36/12 36/12
**only [21]** 11/6 11/14 19/1 19/6 23/22 25/19 26/24 27/6 31/16 32/2 33/12 34/2 34/11 36/3 45/4 48/3 52/1 52/3 52/4 54/6 55/2
**opening [2]** 2/18 2/22
**opined [1]** 38/4
**OPM [3]** 50/25 51/1 51/18
**opposed [10]** 8/7 11/9 19/3 19/9 27/16 30/11 35/5 46/19 47/11 48/6
**option [2]** 12/21 36/13
**order [60]** 3/17 5/3 6/2 7/15 8/1 8/15 13/2 13/6 13/8 13/9 14/17 14/21 16/16 17/11 17/12 17/15 19/17 20/12 20/24 21/1 21/13 22/5 22/16 22/17 22/22 22/23 30/8 32/6 32/20 34/20 35/22 35/25 35/25 36/3 36/4 36/5 37/17 37/17 37/25 38/2 38/5 38/7 38/8 38/10 38/14 38/16 41/8 41/14 42/23 43/1 43/4 43/11 46/6 46/23 48/4 48/25 49/21 53/18 59/9 60/1
**order's [1]** 42/24
**orders [2]** 5/6 17/12
**orienting [1]** 28/9
**original [5]** 6/6 16/25 29/14 47/6 57/11
**Orr [47]** 4/13 4/20 4/23 5/2 5/10 5/17 5/22 5/24 6/22 16/17 16/18 19/16 20/10 21/7 26/6 26/9 28/20 28/20 29/2 29/6 31/13 32/15 38/3 38/20 38/21 39/4 39/7 39/15 42/2 43/3 43/5 43/8 43/9 43/17 43/18 46/13 53/23 59/7 59/20 59/22 60/19 61/1 61/4 61/10 62/2 62/7 62/19
**Orr's [1]** 42/8
**otherwise [4]** 14/25 28/15 43/8 56/10
**out [11]** 15/6 17/3 17/21 24/5 27/8 36/17 42/25 44/3 53/17 55/7 62/25
**over [8]** 13/7 28/18 33/13 33/20 33/25 34/5 34/10 49/4
**overcome [1]** 27/17
**overturn [1]** 28/10
**own [12]** 3/5 6/17 8/1 23/19 24/9 39/19 45/6 45/11 54/17 57/16 57/25 58/24

P

**p.m [1]** 63/4
**page [1]** 60/16
**pages [1]** 61/17
**paints [1]** 51/11
**papers [2]** 8/22 16/9
**paragraph [3]** 60/17 62/6 62/6
**paragraphs [1]** 60/25
**pared [1]** 19/14
**pared-down [1]** 19/14
**part [6]** 8/11 10/3 34/1 43/20 55/22 59/21
**particular [2]** 25/15 30/14
**particularly [3]** 39/16 42/18 50/18
**party [1]** 2/18
**pass [1]** 35/16
**passport [60]** 3/18 3/19 3/22 3/23 3/25 4/3 4/6 4/9 4/10 4/10 4/15 4/22 4/23 7/10 7/11 7/19 7/19 7/24 8/7 8/17 9/7 11/4 12/5 12/7 12/9 12/13 12/17 12/19 12/20 13/3 13/19 13/22 14/2 14/18 16/23 18/25 19/6 19/9 31/14 31/15 31/18 31/20 31/22 31/24 32/1 32/8 32/19 32/22 33/11 35/5 35/10 35/13 37/4 41/4 41/12 44/18 44/20 44/23 47/8 48/10
**passports [7]** 4/2 32/4 32/12 32/17 32/17 45/16 52/1
**past [2]** 3/10 17/14
**pays [1]** 7/5
**peak [1]** 26/16
**peek [1]** 15/23
**people [20]** 3/8 5/18 5/20 6/11 6/18 17/1 17/6 17/6 17/9 17/9 21/2 21/19 25/21 27/8 28/25 29/1 30/10 54/19 59/10 59/10
**people's [1]** 47/20
**perceived [1]** 44/6
**perhaps [12]** 15/5 18/22 23/7 23/12 23/13 25/6 26/12 29/24 30/1 30/11 57/6 58/3
**perjury [6]** 8/24 9/2 25/17 56/21 56/23 57/21
**permissible [1]** 38/14
**permit [1]** 49/5
**permitted [3]** 52/2 52/3 52/5
**person [7]** 12/16 20/17 30/2 45/20 48/2 49/13 55/11
**person's [1]** 49/21
**personal [6]** 3/12 7/4 9/8 26/17 36/13 37/3
**persuasive [1]** 27/15
**pertains [1]** 38/18
**phenomenon [1]** 51/23
**physical [3]** 48/24 58/14 58/15
**physiological [2]** 20/18 59/2
**PI [2]** 8/13 60/19
**pickle [1]** 13/22
**picks [1]** 25/22
**picture [1]** 4/20
**piece [4]** 11/6 18/24 48/22 49/7
**pincites [1]** 60/12
**place [3]** 29/8 29/8 44/8
**plainly [1]** 53/23
**plaintiff [63]** 1/4 1/11 2/6 2/8 2/16 4/15 20/1 20/7 25/8 31/17 31/21 31/23 32/7 32/15 32/22 32/22 33/3 33/3 33/6 33/14 33/16 33/19 33/22 33/24 33/24 34/1 34/3 34/13 35/4 36/17 37/13 37/14 39/5 39/14 39/16 39/17 39/24 39/25 40/18 40/20 40/23 41/8 41/10 42/17 43/4 43/25 44/1 44/4 44/5 45/2 49/24 49/25 50/12 50/12 50/17 51/3 51/11 51/16 52/19 52/20 53/25 54/12 61/16
**plaintiff's [11]** 3/14 33/16 39/19 39/20 40/1 40/7 40/16 46/2 50/13 54/17 55/22
**plaintiffs [4]** 4/23 39/4 54/1 59/7
**plaintiffs' [1]** 20/10
**plane [1]** 11/2
**plans [3]** 19/11 19/13 35/18
**plate [3]** 44/9 45/19 45/24
**please [2]** 2/4 7/9
**pocket [1]** 12/15
**point [16]** 7/17 15/7 17/21 18/6 18/25 24/24 27/7 27/8 30/21 32/25 35/3 39/12 42/21 54/3 58/17 62/1
**points [6]** 30/13 42/1 56/11 56/24 58/20 59/5
**policies [11]** 3/7 3/16 6/22 8/3 13/14 16/14 19/15 20/25 23/5 25/10 28/24
**policy [39]** 4/10 6/8 6/23 12/23 13/6 14/9 14/17 14/22 14/23 15/19 16/22 17/17 17/20 23/8 23/11 23/11 23/12 23/14 27/8 32/12 34/20 35/21 35/21 35/22 35/24 36/4 36/21 37/15 37/16 37/21 37/25 53/10 56/12 56/12 56/18 58/1 58/4 58/6 58/24
**political [1]** 24/22
**poor [1]** 12/9
**portrait [1]** 59/13
**position [3]** 23/12 38/11 40/11
**possible [3]** 34/16 57/12 62/4
**possibly [1]** 10/14
**posture [2]** 21/22 61/2
**potential [1]** 3/25
**potentially [6]** 4/6 4/7 12/18 22/15 29/24 56/22
**Powell [1]** 27/24
**power [2]** 8/10 22/3
**practice [2]** 23/13 35/19
**pre [3]** 14/17 41/14 56/14
**pre-enforcement [1]** 56/14
**pre-executive [1]** 41/14
**precedent [2]** 27/14 28/9
**precise [1]** 51/25
**precisely [2]** 38/2 38/11
**preclude [1]** 13/15
**preexisting [1]** 55/5
**prefer [2]** 34/4 34/9
**preferable [1]** 49/14
**preference [2]** 19/3 33/19
**prefers [2]** 33/25 34/7
**preliminary [12]** 1/9 2/17

**P**

**preliminary... [10]** 3/1 3/15 13/16 26/9 32/21 34/15 43/17 43/21 50/9 54/2
**prescriptions [1]** 44/16
**present [7]** 12/23 13/25 16/1 16/24 33/4 33/10 48/22
**presentation [1]** 48/24
**presented [6]** 41/9 43/9 43/20 43/21 45/4 53/14
**presents [1]** 50/17
**president [6]** 22/3 22/12 36/6 37/18 39/2 42/15
**presidential [2]** 22/3 22/23
**pretty [2]** 5/12 50/17
**primarily [1]** 44/16
**primary [1]** 33/5
**prior [2]** 26/19 56/24
**privacy [12]** 26/15 26/21 27/4 27/12 27/16 27/21 27/23 28/1 50/22 50/24 51/20 52/24
**private [2]** 44/11 53/1
**pro [3]** 31/2 62/24 62/25
**probably [1]** 61/6
**problem [9]** 10/9 11/15 12/13 21/12 23/1 23/6 35/17 37/11 38/17
**problems [4]** 7/14 17/1 19/1 30/3
**Procedure [1]** 5/16
**proceed [1]** 61/11
**proceedings [2]** 63/4 64/5
**process [9]** 7/2 7/6 7/7 8/11 8/20 9/13 36/17 41/25 43/16
**processing [1]** 19/8
**Procter [3]** 1/13 1/15 1/18
**product [1]** 40/1
**program [6]** 10/2 11/22 33/9 33/10 33/12 34/2
**pronouns [2]** 24/21 24/23
**proper [2]** 56/17 58/25
**property [7]** 44/11 44/23 45/13 45/17 46/3 46/5 49/16
**prosecute [1]** 8/23
**prosecuted [1]** 56/23
**protected [1]** 27/25
**protection [13]** 5/15 6/15 28/15 28/18 28/19 28/22 29/4 29/5 29/22 39/6 51/12 53/21 53/23
**protections [4]** 26/25 27/1 27/4 27/6
**provide [5]** 18/18 21/4 39/15 43/1 60/12
**provided [4]** 30/15 41/16 48/3 57/3
**provides [1]** 7/18
**providing [1]** 9/6
**proxy [1]** 15/16
**public [7]** 13/6 22/11 23/11 44/12 45/9 46/5 49/16
**publicly [2]** 11/21 13/15
**published [2]** 36/25 56/13
**pure [1]** 31/19
**purely [3]** 24/16 31/24 40/1
**purposes [4]** 7/12 8/13 11/15 36/7
**pursuant [1]** 22/23
**put [7]** 3/4 5/20 9/1 9/21 12/14 47/17 56/21
**puts [4]** 8/21 8/24 8/25 37/20
**putting [1]** 9/4

**Q**

**quasi [5]** 53/11 54/5 54/11 54/24 55/20
**quick [2]** 56/10 56/24
**quickly [3]** 41/22 58/21 59/4
**quite [8]** 7/7 38/24 39/14 40/10 44/4 51/7 53/1 53/23
**quote [2]** 34/12 39/8

**R**

**R [2]** 2/1 64/1
**race [1]** 54/7
**Rachel [2]** 59/12 59/13
**rather [1]** 47/6
**rationale [1]** 42/24
**Re [3]** 50/25 51/1 51/18
**reach [1]** 53/4
**reaction [1]** 13/12
**read [2]** 31/25 35/16
**real [3]** 23/22 31/5 35/17
**realistic [1]** 12/21
**realize [1]** 26/1
**really [28]** 6/9 6/15 7/16 14/9 15/16 15/24 20/11 20/11 22/2 23/25 27/7 31/2 31/14 33/23 34/14 35/4 39/15 43/24 49/23 53/16 54/13 58/23 61/25 62/5 62/14 62/23 62/24 63/1
**reapplication [2]** 8/11 9/5
**reapply [2]** 4/10 12/18
**reapplying [1]** 7/18
**reason [12]** 12/4 13/13 14/22 16/8 17/16 18/3 18/18 31/23 34/11 35/4 44/24 58/22
**reasonable [1]** 47/10
**reasoning [2]** 42/13 42/16
**reasons [2]** 14/11 26/21
**reassignment [1]** 52/4
**rebuttal [4]** 28/13 28/16 30/20 56/8
**receive [1]** 37/5
**receives [1]** 9/13
**receiving [1]** 37/13
**recent [3]** 51/10 51/23 59/24
**recently [6]** 4/1 11/21 17/13 35/23 51/6 51/13
**recognition [3]** 15/13 20/16 24/14
**recognize [3]** 6/18 16/21 53/9
**recognized [9]** 16/8 17/14 22/21 26/23 51/13 52/23 52/25 53/6 55/14
**recognizing [2]** 20/21 21/1
**reconcile [1]** 21/7
**record [15]** 2/3 2/5 3/5 30/5 30/15 32/3 33/22 40/22 42/19 43/5 43/5 59/21 62/15 62/18 64/5
**records [5]** 51/23 57/5 57/10 57/18 58/8
**reference [3]** 36/1 47/13 50/19
**reflects [1]** 18/1
**regardless [3]** 10/19 19/20 24/2
**registered [1]** 45/21
**regularly [2]** 9/17 35/19
**regulating [1]** 24/10

**R**

**regulation [1]** 45/15
**regulations [2]** 13/10 44/22
**Reich [1]** 22/10
**reissue [1]** 7/24
**reiterated [1]** 50/24
**rejected [2]** 27/13 30/5
**relatively [3]** 51/10 51/12 51/23
**relevance [1]** 57/7
**relevant [2]** 42/9 55/3
**reliable [7]** 43/1 46/21 47/2 47/5 47/24 58/3 58/5
**reliance [1]** 55/1
**relief [2]** 13/16 19/17
**relies [1]** 44/4
**religious [1]** 49/13
**rely [1]** 55/23
**remain [2]** 31/16 32/6
**remarks [1]** 2/19
**remember [1]** 12/11
**removing [2]** 59/12 59/15
**renew [9]** 6/25 7/3 8/16 12/25 16/23 32/7 32/19 37/2 41/15
**renewal [9]** 7/2 7/6 9/9 32/18 32/25 36/16 36/19 41/11 56/19
**renewed [2]** 2/16 18/24
**renewing [1]** 36/9
**renews [2]** 41/3 41/4
**repeatedly [1]** 17/5
**repetition [1]** 30/6
**repetitive [1]** 29/3
**replacement [1]** 9/18
**replacing [1]** 59/13
**reply [2]** 50/3 52/20
**report [5]** 30/17 39/21 59/6 59/18 60/3
**Reporter [3]** 1/23 1/23 64/3
**request [2]** 9/9 61/15
**requesting [1]** 8/9
**require [1]** 36/2
**required [4]** 32/19 38/9 39/2 42/16
**requirement [1]** 42/19
**requiring [4]** 10/14 16/23 16/24 44/10
**research [1]** 6/24
**resident [1]** 55/13
**respect [9]** 31/18 32/8 36/19 38/25 42/24 47/9 48/17 52/1 54/12
**respects [1]** 47/12
**response [3]** 19/22 61/17 62/11
**responsibility [1]** 22/13
**restricting [1]** 24/12
**result [1]** 40/5
**retain [1]** 18/7
**reveal [2]** 3/12 10/21
**reversed [1]** 28/7
**revert [1]** 6/5
**reverted [1]** 8/1
**review [2]** 21/25 22/24
**reviewability [2]** 23/7 42/7
**reviewable [1]** 22/17
**reviewed [1]** 39/22
**reviewing [1]** 21/24
**revocation [3]** 3/25 4/22 4/24
**revoked [1]** 32/2
**revoking [1]** 32/12
**riddled [1]** 17/15
**right [60]** 4/4 5/1 6/3 8/14 9/1 10/14 13/2 19/6 19/9 20/5 23/15 26/3 26/11 26/14 26/15 26/16 26/20 27/8 27/12 27/16 27/21 27/23 28/1 31/8 35/21 36/4 38/3 38/15 41/2 46/4 46/17 47/19 48/8 48/14 49/4 49/7 49/22 50/24 51/2 51/4 51/13 51/19 52/21 52/24 52/25 53/1 53/6 53/9 53/13 53/16 53/18 54/21 55/6 55/11 55/12 55/14 55/19 55/22 56/7 60/16
**rightly [1]** 17/21
**rights [2]** 9/3 24/4
**ripeness [3]** 36/18 37/10 41/3
**risk [4]** 3/24 9/22 10/19 25/17
**risks [1]** 11/7
**room [2]** 1/24 27/3
**rooted [2]** 51/5 51/15
**routine [1]** 4/4
**run [1]** 11/7

**S**

**S [1]** 2/1
**safety [1]** 11/20
**same [11]** 5/14 6/3 12/8 20/2 20/5 29/5 29/21 30/3 39/5 45/3 45/18
**SANTOS [2]** 1/12 2/9
**satisfied [1]** 53/10
**satisfy [3]** 51/3 51/15 51/17
**savvy [1]** 10/25
**saying [5]** 40/15 46/11 49/11 51/12 55/3
**schedule [1]** 61/19
**school [1]** 25/22
**scribbled [1]** 60/15
**scrutiny [1]** 53/11
**se [1]** 62/25
**seaports [1]** 19/12
**secluded [1]** 27/2
**second [3]** 27/23 30/20 46/2
**Security [6]** 47/8 50/25 51/1 51/18 57/5 57/11
**seeing [1]** 49/23
**seem [4]** 23/5 34/21 34/22 41/2
**seem to [1]** 34/21
**seems [11]** 16/1 18/23 19/1 19/19 26/11 28/21 30/8 33/8 39/25 41/9 51/23
**select [1]** 52/16
**selection [4]** 49/5 51/8 51/9 52/5
**self [5]** 49/5 51/8 51/9 52/5 52/16
**self-select [1]** 52/16
**self-selection [4]** 49/5 51/8 51/9 52/5
**sense [2]** 18/4 62/14
**separate [5]** 4/13 35/24 38/10 43/8 55/17
**series [3]** 2/17 22/20 59/9
**service [1]** 31/5
**set [1]** 61/19
**setting [1]** 29/10
**several [1]** 8/19
**severe [1]** 9/22
**sex [82]**
**sexual [1]** 52/4
**shadow [1]** 5/6
**shame [1]** 27/8
**sheet [1]** 40/2
**shot [1]** 26/13

## S


**show [3]** 7/12 8/14 56/16
**shows [2]** 15/21 17/18
**side [1]** 53/3
**sides [1]** 2/18
**significant [6]** 5/21 9/21 10/5 10/7 26/25 30/16
**significantly [1]** 19/14
**similarly [1]** 5/15
**simply [4]** 20/19 20/21 38/7 43/1
**single [1]** 20/1
**sits [1]** 50/20
**situation [1]** 32/22
**situations [2]** 33/20 42/14
**six [1]** 58/11
**Sixth [1]** 51/5
**skeptical [1]** 50/21
**skipped [1]** 28/17
**skipping [1]** 18/21
**Skrmetti [4]** 54/4 54/14 55/7 55/7
**slightly [2]** 5/2 32/11
**SNYDER [4]** 1/11 2/8 2/23 56/7
**social [4]** 24/22 47/7 57/5 57/11
**somebody [4]** 17/17 25/25 47/11 47/12
**somebody's [1]** 15/15
**somehow [2]** 31/20 57/10
**someone [7]** 28/7 29/18 41/15 48/22 49/21 55/10 55/18
**sometimes [5]** 34/4 34/15 41/19 41/21 41/22
**somewhere [2]** 51/24 61/7
**soon [1]** 33/15
**sorry [6]** 10/17 18/21 30/18 53/12 57/7 60/2
**sort [37]** 3/22 4/19 5/7 6/2 6/24 10/16 11/5 11/10 11/12 12/20 12/21 12/24 13/23 15/3 15/23 16/17 16/18 18/3 18/21 19/8 20/6 21/14 21/21 27/11 28/17 30/6 30/9 34/2 34/6 38/9 39/13 40/6 42/1 44/12 52/2 54/15 62/5
**speak [3]** 9/2 10/20 56/22
**speaks [1]** 24/8
**specific [7]** 6/12 7/22 7/23 27/3 31/22 36/1 45/15
**specifically [10]** 4/22 14/6 19/3 19/25 26/16 30/14 37/7 40/7 44/4 44/21
**specifies [1]** 45/16
**speculation [1]** 31/19
**speculative [2]** 31/24 32/2
**speech [27]** 23/24 23/24 24/1 24/2 24/3 24/3 24/4 24/6 24/7 24/11 24/12 24/13 24/18 24/20 24/21 24/25 25/5 25/7 43/25 44/2 49/24 49/25 50/4 50/8 50/11 50/13 50/13
**spelled [2]** 42/25 53/17
**spotlight [1]** 18/17
**stage [3]** 43/18 54/2 60/19
**stand [3]** 21/10 22/10 43/11
**standard [2]** 15/14 19/9
**standing [5]** 8/14 13/24 17/25 21/21 25/8
**stands [1]** 57/22
**start [6]** 2/22 3/18 18/8 23/20 23/21 30/13
**started [1]** 62/25
**state [31]** 4/4 7/21 8/2 13/1 13/2 13/12 13/19 14/5 15/4 15/11 15/12 15/18 16/3 16/7 16/22 19/18 22/18 23/7 29/20 38/6 45/19 45/20 47/24 49/3 49/9 49/10 49/12 57/3 57/14 58/6 58/12
**state's [2]** 11/22 34/2
**state-issued [1]** 49/3
**stated [1]** 22/11
**statement [2]** 45/1 45/8
**statements [3]** 32/16 43/7 57/25
**states [9]** 1/1 1/10 2/14 33/13 33/18 35/12 44/19 49/5 49/6
**status [3]** 17/22 25/24 42/11
**statutory [2]** 22/13 27/1
**stay [2]** 5/10 19/19
**stayed [2]** 4/15 61/10
**staying [1]** 5/4
**stemming [1]** 3/22
**step [2]** 22/13 54/14
**still [4]** 12/2 20/5 32/15 58/10
**stolen [1]** 31/21
**Stonewall [1]** 59/16
**stood [1]** 61/13
**stop [3]** 9/25 10/8 54/14
**Street [2]** 1/13 1/21
**strenuously [1]** 18/20
**strikes [6]** 6/1 11/2 21/12 28/22 47/22 55/4
**strongly [3]** 8/22 22/9 49/15
**Stufft [2]** 32/3 32/14
**subject [12]** 4/2 4/3 4/5 4/24 10/5 10/7 10/19 12/18 22/24 36/5 36/22 47/1
**subjecting [1]** 39/9
**subjective [3]** 44/12 46/25 48/6
**submit [3]** 28/4 60/21 61/7
**submits [2]** 7/4 57/21
**submitted [1]** 3/5
**subsequently [1]** 29/19
**subsidiary [1]** 57/20
**substantive [2]** 43/16 50/16
**substitute [1]** 12/9
**succeed [1]** 28/22
**suffer [2]** 9/22 20/21
**suffering [1]** 19/18
**suffers [1]** 3/24
**sufficient [2]** 28/7 54/24
**sufficiently [2]** 11/11 18/22
**suggest [1]** 19/18
**suggested [1]** 22/9
**Suite [1]** 1/18
**summary [3]** 43/19 61/1 61/10
**superficially [1]** 5/14
**supplement [1]** 61/25
**supplemental [1]** 61/24
**supporting [1]** 57/24
**suppose [2]** 4/8 19/5
**Supreme [24]** 4/14 5/3 5/6 26/19 26/22 27/10 27/20 28/8 29/8 30/4 30/14 38/3 38/15 39/6 43/2 43/9 44/7

**S**

**Supreme... [7]** 44/10 44/22 46/13 52/23 54/6 61/3 62/17
**sure [6]** 9/11 28/9 34/18 43/14 61/2 62/16
**surgery [1]** 52/4
**surprised [1]** 23/2
**suspect [10]** 15/10 15/10 53/11 54/5 54/7 54/8 54/11 54/16 54/25 55/20
**suspension [2]** 3/25 4/24
**sympathetic [1]** 17/20

**T**

**T [3]** 59/15 64/1 64/1
**table [1]** 2/9
**Talbott [2]** 17/13 59/25
**talk [9]** 6/24 17/4 24/6 28/14 28/15 28/19 36/8 53/20 53/22
**talking [8]** 12/10 16/16 19/21 26/16 26/18 29/6 29/25 30/1
**talks [1]** 60/25
**telegraphing [1]** 45/20
**telling [1]** 62/17
**tension [1]** 23/23
**Tenth [2]** 28/1 44/3
**term [1]** 39/17
**terms [1]** 32/4
**testimony [1]** 40/17
**theft [1]** 4/3
**then as [1]** 12/4
**theoretical [1]** 37/8
**thin [1]** 31/25
**thinking [3]** 5/11 30/9 61/3
**third [3]** 28/2 40/19 58/2
**thorough [1]** 52/17
**Though [1]** 35/14
**thought [3]** 28/21 30/18 60/3
**thoughtful [1]** 63/1
**three [4]** 16/8 26/21 26/22 54/6
**throw [1]** 42/17
**tied [1]** 42/19
**ties [2]** 40/6 40/15
**timeline [1]** 4/4
**TIMOTHY [2]** 1/17 2/9
**tired [1]** 55/13
**today [5]** 2/9 5/19 11/13 18/22 36/16
**told [1]** 17/5
**took [1]** 38/3
**tool [1]** 12/20
**top [1]** 21/3
**toss [1]** 29/17
**touch [1]** 50/14
**towards [1]** 59/10
**tradition [2]** 51/5 51/7
**traditional [2]** 6/12 6/20
**train [1]** 30/17
**trait [1]** 59/3
**traits [1]** 59/2
**transcript [2]** 1/9 64/4
**transgender [24]** 5/18 6/8 17/6 17/11 17/14 19/21 21/8 25/24 28/24 28/25 39/4 39/5 39/10 39/11 40/1 42/10 54/4 54/11 54/13 55/3 55/6 59/10 59/15 60/1
**translate [1]** 17/24
**trap [3]** 9/2 56/21 57/21
**travel [7]** 3/15 19/11 19/13 19/14 33/7 44/21 49/21
**Traveler [2]** 33/9 33/10
**treatment [1]** 39/9
**tried [2]** 2/25 6/24
**tries [1]** 43/4
**trigger [1]** 41/25
**triggered [1]** 53/11
**true [7]** 7/17 7/19 27/19 28/17 39/6 45/3 64/4
**truly [2]** 11/14 40/11
**trump [5]** 1/6 2/3 5/7 24/3 24/4
**Trusted [2]** 33/9 33/10
**try [4]** 2/21 31/17 39/14 51/16
**trying [5]** 21/7 28/8 32/12 49/24 49/25
**TSA [2]** 9/19 11/1
**turn [8]** 6/22 21/20 23/16 26/3 42/2 42/6 43/12 61/23
**turning [1]** 19/16
**turns [5]** 6/9 39/3 43/24 46/14 46/15
**tweets [3]** 59/8 59/9 62/6
**twice [1]** 22/8
**two [8]** 25/14 26/23 29/7 30/13 38/23 45/23 56/24 58/20
**type [3]** 20/8 24/15 24/16
**typical [1]** 6/12

**U**

**U.S [1]** 1/20
**ultimately [1]** 4/15
**umbrella [1]** 54/18
**uncertain [1]** 32/4
**unchangeability [1]** 48/4
**unchangeable [2]** 46/24 48/8
**uncomfortable [2]** 12/2 34/12
**unconstitutional [2]** 10/9 10/12
**under [11]** 7/23 7/25 21/24 21/25 27/25 32/4 36/6 51/17 56/17 58/1 58/24
**understandings [1]** 6/13
**uniform [1]** 34/6
**unintended [1]** 30/11
**unique [1]** 11/13
**UNITED [7]** 1/1 1/10 2/14 33/13 33/17 35/12 44/19
**unless [6]** 6/21 28/10 38/12 51/3 56/2 61/21
**unreasonable [1]** 15/9
**unripe [1]** 37/15
**untrue [1]** 3/10
**up [11]** 4/5 7/6 21/10 23/3 25/22 30/23 31/17 32/15 32/18 32/25 56/16
**updated [1]** 7/4
**upstairs [1]** 50/20
**use [27]** 7/11 8/16 10/6 10/7 11/3 11/4 11/8 11/18 12/3 12/3 15/13 15/15 19/1 19/5 33/12 33/25 34/5 34/8 34/9 35/3 35/4 35/8 44/11 44/16 46/3 49/15 52/5
**used [9]** 10/1 11/1 11/16 19/7 33/6 47/17 49/18 52/3 52/9
**useful [3]** 61/1 61/5 63/2
**uses [8]** 9/15 9/16 9/17 9/19 9/20 10/17 10/18 39/14
**using [10]** 10/8 10/23 11/14 11/15 11/20 12/19 19/9 33/20 39/17 42/24
**utilize [1]** 33/11

**V**

**v [4]** 4/2 5/7 12/8 22/10
**valid [5]** 8/17 11/2 31/16 32/6 32/22

**V**

**values [1]** 62/24
**variety [1]** 54/18
**verify [1]** 41/16
**versa [1]** 34/7
**versus [7]** 6/7 15/3 15/4 15/5 16/17 42/10 62/7
**via [1]** 22/5
**vice [1]** 34/7
**view [8]** 4/9 7/22 7/23 8/1 14/13 17/8 57/8 59/19
**viewed [1]** 50/12
**views [4]** 21/23 24/9 45/11 59/11
**voluntary [1]** 11/8
**vs [3]** 1/5 2/3 51/6

**W**

**WALKER [5]** 1/20 2/14 31/8 61/13 62/9
**wallet [1]** 12/15
**wants [4]** 22/4 37/14 47/16 50/1
**warrant [1]** 40/23
**warrants [1]** 34/15
**Washington [4]** 1/5 1/14 1/22 1/25
**way [14]** 13/18 15/14 18/4 31/17 33/12 34/3 36/11 45/1 45/14 45/19 51/11 55/7 56/15 59/19
**ways [2]** 40/5 54/23
**weak [1]** 50/17
**weakest [1]** 26/12
**website [7]** 4/4 36/15 36/22 36/25 41/20 41/20 59/16
**week [3]** 13/12 13/13 28/8
**weekend [1]** 62/4
**weeks [1]** 4/5
**welcome [1]** 30/20
**Whalen [1]** 27/2
**what's [5]** 13/19 14/12 26/2 33/21 47/14
**whatsoever [2]** 52/19 54/7
**whereas [1]** 46/24
**white [1]** 40/18
**who's [1]** 55/18
**whole [1]** 55/22
**whose [2]** 4/15 29/18
**wide [1]** 54/18
**wish [1]** 28/12
**withhold [1]** 10/11
**withholding [1]** 10/13
**within [4]** 5/5 5/5 8/10 54/20
**without [5]** 4/6 16/22 39/8 53/4 53/8
**woman [3]** 55/12 58/16 58/16
**women [1]** 47/4
**wondering [4]** 13/17 16/13 34/24 52/7
**Wooley [5]** 44/7 45/24 46/4 49/8 49/13
**word [1]** 45/25
**words [1]** 3/11
**work [3]** 36/17 61/6 62/10
**works [2]** 23/22 36/12
**world [1]** 41/14
**worried [1]** 23/1
**worse [1]** 18/16
**worth [3]** 56/19 58/2 61/9
**wrap [1]** 30/23
**write [1]** 25/15
**written [1]** 36/25
**wrong [3]** 7/9 17/9 55/11
**wrote [1]** 12/9

**X**

**X [2]** 40/19 52/6
**XX [1]** 40/12
**XY [1]** 40/12

**Y**

**year [3]** 11/21 13/7 32/25
**years [10]** 3/10 10/2 11/18 16/2 18/12 18/13 27/3 51/14 51/15 58/11
**yesterday [2]** 35/23 61/9
**York [1]** 1/19

**Z**

**zoom [2]** 17/3 24/5
**ZPass [1]** 35/16